MASSACHUSETTS BONDING & INSURANCE COMPANY *v.* HOME
LIFE & ACCIDENT COMPANY.

## Opinion delivered May 31, 1915.

1. SURETYSHIP—SURETY BOND—LOSS—LIABILITY.—Where a loss occurs upon a policy of fire insurance, only the surety upon the bond of the fire insurance company at the time of the loss will be liable, and not the surety upon the bond at the time the policy was written.

2. CONFLICT OF LAWS—CONTRACT OF INSURANCE—VALID WHERE MADE.— A contract of fire insurance, when made in another State, will be treated as valid here, if valid in the State where made.

3. INSURANCE—FAILURE TO COMPLY WITH STATUTE—FOREIGN CONTRACT— VALIDITY—PENALTY.—Where a contract of insurance is made in another State and is valid there, it will be treated as valid here, although it does not comply with the terms of Act 327, Acts 1905, but under the act, the insurance company will be liable for a penalty for failure to comply with its terms.

4. INSURANCE—BOND—LIABILITY.—The surety on the bond of a fire insurance company, filed under Kirby's Digest, § 4339, is liable on any valid contract of insurance issued to any person upon property situated in this State, and Act 327, Acts 1905, which provides penalties for a violation of any of its provisions, does not limit or restrict the liability of the surety of the insurance company on its bond.

5. COMPUTATION OF TIME—RULE—SURETYSHIP CONTRACT.—In computing time the first day is to be excluded and the last day is to be included, and the rule is applicable to the bond of an insurance company filed with the auditor, under Kirby's Digest, § 4339, and the rights and liabilities of the surety will be so governed.

6. INSURANCE—LOSS—LIABILITY OF BOND.—Appellant was surety on the bond of a fire insurance company for a period of one year ending March 1, 1913, filed under Kirby's Digest, § 4339. *Held,* the surety was liable where a loss occurred at daybreak on March 1, 1913.

7. RECEIVERSHIP—EFFECT ON CORPORATION.—The appointment of a receiver for a corporation suspends the corporate functions of the company, and its officers and agents thereafter cease to have any authority over its property and effects.

8. INSURANCE COMPANIES — INSOLVENCY — RECEIVERSHIP — PAYMENT OF LOSSES—PENALTY.—A loss covered by a policy of fire insurance occurred on March 1, 1913. The insurance company was placed under a receivership on March 27, 1915; proof of loss was made out and sent to the company on March 29, 1913. *Held,* the insurance company was not thereafter liable under Act 115, Acts 1905, for the penalty therein provided for failure to pay the amount of the loss within the statutory period.

9. SURETYSHIP—RELEASE OF PRINCIPAL—PENALTY.—When the principal is released from liability, the surety is released also.

10. INSURANCE—LOSS—PENALTY—LIABILITY OF SURETY ON BOND—RELEASE. —An insurance company was released from liability for a penalty and attorney's fees, fixed by Act 115, Acts 1905, by reason of its insolvency and the appointment of a receiver, before filing of proof of loss, *held*, the principal being released, the surety on its bond was likewise released from liability under the statute.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Bradshaw, Rhoton & Helm,* for appellant.

1. The policy issued in Alabama on property in Arkansas, is void as to the surety, being in violation of Kirby's Digest, § § 4363, 4364, and Acts 1905, p. 780. 29 Ark. 386; 47 *Id.* 378; 34 *Id.* 762; 81 *Id.* 599. Where an illegal contract has been made, no court will grant relief, but leaves the parties where it finds them, if they have been cognizant of the illegality. 67 Ark. 480; 81 *Id.* 41; 98 S. W. 711; 95 Ark. 552; 129 S. W. 797. Contracts contrary to the laws of a State will not be enforced. 126 Wisc. 281; 105 N. W. 801; 110 Am. St. 919; 27 L. R. A. 556.

2. If the policy is a valid liability, the Home Life & Accident Company is liable. The loss occurred on March 1, 1913, whereas the bond of appellant expired February 28, 1913. March 1 is the beginning of the insurance year. Year means calendar year (Kirby's Digest, § 7814), or twelve calendar months. 40 Cyc. 2876; 38 *Id.* 310. The year had expired when the loss occurred. The last day should be excluded. Part of a day is not reckoned in law. The renewal of the bond terminated all liability of appellant. 49 S. W. 415; 16 L. R. A. 542. This court has settled the question. 76 Ark. 410; 168 S. W. 1062. See, also, 76 S. E. 1036; 126 S. W. 313.

3. Cotton to the value of $10,000 was not destroyed by the fire. No penalty nor attorneys' fee should have been allowed. 88 Ark. 474.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for Hanson, Receiver.

1. The policy was not void. It was valid in Alabama, where issued, and hence valid here. 216 Fed. 642-9;

61 Ark. 1; 66 *Id.* 472; 234 U. S. 542. Where an act is forbidden and a penalty prescribed, the penalty is exclusive. 61 Ark. 1; 77 *Id.* 203.

2. The fire was on March 1, 1913. The appellant's bond was for a year ending that day. The latter day was included, the day of the execution excluded. The first bond covered all liability occurring on March 1, 1913. 101 Ark. 353; 23 Atl. 198; 142 N. W. 437, 35 Pac. 878.

3. The penalty and attorneys' fee should have been allowed. 2 Sto. Eq., § 1326; Pom. Eq. § 458; 108 U. S. 436; 13 So. 39; 56 *Id.* 792; 86 Ark. 489; 223 U. S. 261-2.

*McRae & Tompkins,* for Home Life & Accident Company.

1. No more than $20,000 can be adjudged against the surety company on its bond. 80 Ark. 49; 75 S. W. 1076; 49 L. R. A. 193. This was settled on the former appeal.

2. The penalty and attorney's fees should not have been allowed. Acts 1905, 308; 86 Ark. 115; 104 *Id.* 423; 88 *Id.* 473; 95 Ark. 390. A receiver had been appointed before the loss. See 22 Cyc. 1316; 28 L. R. A. 231; 111 U. S. 784.

*Cockrill & Armistead,* for appellees.

1. The term of the bonds includes the last day named and excludes the first. 76 Ark. 410; 117 Ark. 372; 49 L. R. A. 193 and note, 208; 53 Pac. 433; 38 Cyc. 320; 108 S. W. 778.

HART, J. This is the second appeal in this case. For the opinion on the former appeal, see *Massachusetts Bonding & Ins. Co.* v. *Home Life & Accident Co.,* 113 Ark. 576, 168 S. W. 1062. The issues raised by the present appeal are different from those involved in the former appeal, and on that account it will be necessary for a particular statement of the facts pertinent to the issues raised by the present appeal.

The American Union Fire Ins. Co. of Philadelphia, Penn., was engaged in the fire insurance business in the State of Arkansas during the years 1911, 1912 and 1913. The Southwestern Surety & Insurance Company signed

as surety the bond of said fire insurance company to the State of Arkansas for the period of one year ending March 1, 1912. The Massachusetts Bonding & Insurance Company signed as surety the bond of said insurance company to the State of Arkansas "for the period of one year ending March 1, 1913." The bond was conditioned that the American Union Fire Insurance Company should promptly pay all claims arising and accruing to any person or persons by virtue of any policy issued by said company during the term of the bond, upon any property situated in the State of Arkansas when the same should become due. This bond was filed in the auditor's office and approved February 29, 1912. The Home Life & Accident Company executed a similar bond as surety of said fire insurance company for the period of one year, ending March 1, 1914.

C. C. Hanson, as receiver of the Gulf Compress Company, an insolvent domestic corporation, procured a policy of insurance in said fire insurance company for $10,000 on 168 bales of cotton. On March 1, 1913, about daylight, a period of time during the life of the policy, a fire occurred which destroyed the 168 bales of cotton. The policy of fire insurance was executed in the State of Alabama.

The American Union Fire Insurance Company became insolvent, and on March 27, 1913, a receiver was appointed to take charge of its assets. On the 29th day of March, 1913, proof of loss duly made out and signed by the receiver in accordance with the terms of the policy was mailed to the insurance company. On June 19, 1913, C. C. Hanson, as receiver of the Gulf Compress Company, instituted an action in the circuit court against the Massachusetts Bonding & Insurance Company to recover the amount of loss covered by said policy of fire insurance. On July 14, 1913, the present action was instituted in the chancery court by the Massachusetts Bonding & Insurance Company against The Home Life & Accident Company, C. C. Hanson, receiver of the Gulf Compress Company, and other parties having claims against the American Union Fire Insurance Company. The plaintiff prayed

for an order enjoining defendants from prosecuting any suits against it in the law courts of the State of Arkansas, and requiring them to file their claims for adjudication in the chancery court where an ancilliary receiver had been appointed to take charge of and wind up the assets of the said insurance company. An injunction was granted as prayed for.

The Home Life & Accident Company filed an answer in which it denied liability on the bond which it had signed as surety. Subsequently, Hanson, as receiver of the Gulf Compress Company, filed an intervention and asked judgment against the Massachusetts Bonding & Insurance Company for $10,000, the amount of the policy above referred to. Other claims to the amount of $18,000 were filed.

(1)   On the former appeal we held that though loss occur upon policies written while the earlier bond was in force, only the surety upon the bond at the time of the loss is liable, the provision for renewal contemplating that there should be only one bond in force at one time. The other claims above mentioned, amounting to $18,000, under our ruling in the former appeal, accrued during the life of the bond of the Home Life & Accident Company, and on that account were claims for which its bond was liable. There was a contest between the Massachusetts Bonding & Insurance Company and the Home Life & Accident Company as to which would be liable upon the $10,000 policy issued to Hanson, as receiver of the Gulf Compress Company. The chancellor held that the Massachusetts Bonding & Insurance Company was liable for that claim and rendered judgment against it for the sum of $10,000 and the accrued interest, but refused to allow statutory penalty and attorney's fee. The case is here on appeal.

Act 327 of the Acts of 1905 is amendatory of sections 4371-2-3-4 of Kirby's Digest. See Acts 1905, p. 780.

Section 2 of the act amends section 4372 of Kirby's Digest, and provides that any person licensed by the auditor to act as agent for any fire insurance company is prohibited from paying, directly or indirectly, any commis-

sion, brokerage or other valuable consideration on account of any policy or policies covering any property in the State of Arkansas to any person, agent, firm or corporation who is a nonresident of the State.

Section 3, which amends section 4373 of Kirby's Digest, provides that when the auditor shall have received notice or information of any violation of any of the provisions of the act, he shall investigate such violation, and further provides for a revocation of the license of the insurance company for a certain period of time for a violation of the provisions of the act.

Section 1 of the act is amendatory of section 4371 of Kirby's Digest, and in effect provides that the companies named in the act are prohibited from authorizing or allowing any agent who is a nonresident of the State to issue or cause to be issued its own policy or policies of insurance or reinsurance on property located in this State. A comparison of these sections of the act of 1905 with the sections of the Digest which they amend, shows that the amendment consists in bringing other companies than fire insurance companies within the terms of the act.

(2)   Counsel for appellant Massachusetts Bonding & Insurance Company insist that because the contract of insurance in question was issued in the State of Alabama, it is void. They further contend that under the rule laid down in *Crawford* v. *Ozark Insurance Company,* 97 Ark. 549, we must presume that it was the intention of the surety company to execute the bond in compliance with the requirements of the statute, and because the insurance company failed to comply with the provisions of the act of 1905, above referred to, the surety company is not liable on the bond. It is true that the contract of insurance was an Alabama contract, but, being valid under the laws of that State, it is valid here. *State Mutual Fire Ins. Assn.* v. *Brinkley Stave and Heading Co.,* 61 Ark. 1.

(3)   It will be observed that although penalties are imposed by the act of 1905 upon companies and their agents not complying with the provisions of the act, the act does not make void the contract made by the insurance company without such compliance, either as to the

corporations named therein, or the policy holders in said company. In other words, the statute does not assume to forbid the making of contracts of insurance made in another State upon property situated in this State, nor does it assume to invalidate such agreements. The contract of insurance was innocent in itself, and in its consequences. Such contracts are valid and enforceable for the reason that by annexing a penalty, the Legislature manifested its purpose that the penalty should be exclusive of all the consequences of noncompliance.

(4) The bond sued on was executed in compliance with the provisions of section 4339 of Kirby's Digest. The section in effect provides that fire insurance companies shall give a bond to the State with sureties to be approved by the auditor in the sum of $20,000, conditioned for the prompt payment of all claims arising and accruing to any person during the terms of said bond by virtue of any policy issued by any such company upon any property situated in this State. The language of the statute is sufficiently broad and comprehensive to include any valid contract of insurance issued to any person upon property situated in this State. The sections of the act of 1905 above referred to, which provide penalties for a violation of any of its provisions, are upon a collateral subject, and in our opinion do not have the effect to limit or restrict the liability of the surety of the insurance company on its bond. To hold otherwise would be to say that the surety might be released from the performance of its contract according to its terms for the reason that the insurance company had failed to perform a duty that it owed to the State at large, but the nonperformance of which could result in no prejudice to the surety company.

In short, we think the purpose to be accomplished by the act of 1905 and sections 4371-4374 of the Digest, which it amends, is collateral to that sought to be accomplished by the enactment of section 4339 of the Digest, and for that reason we are unwilling to engraft upon the latter section a consequence so inequitable as that contended for by counsel for the surety company.

This brings us to the question as to whether or not the loss accrued during the term of the bond of appellant company or during the term of the bond of the Home Life & Accident Company. Claims amounting to $18,000 have already been adjudged against the Home Life & Accident Company. The claim of Hanson, as receiver of the Gulf Compress Company, is for $10,000. On the former appeal, we held that under our statute, which provides for a renewal of the bond annually, a bond for only $20,000 was in force at any one period of time. If the $10,000 claim under consideration is added to the $18,000 claim already adjudged against the Home Life & Accident Company, the aggregate amount will be $28,000 against that company, and the amount of the bond would be pro rated among all the claimants. It is, therefore, apparent that all persons having claims against the insurance company, as well as the Home Life & Accident Company are interested in casting the liability for the $10,000 claim under consideration against the appellant company, and briefs in support of their contention have been filed in this court by all these parties.

It is the contention of counsel for appellant that the bond of its company became effective on March 1, 1912, and that its liability terminated on February 28, 1913; and that, inasmuch as the fire occurred about daybreak on the first of March, 1913, it is not liable. Evidence was adduced by them tending to show that it was the custom of the auditor to approve the bond on or before the 1st day of March, and to consider it effective on that day.

On the other hand, it is contended by counsel for the claimants and for the Home Life & Accident Company that the bond of the appellant company was in force on March 1, 1913, when the loss occurred. As we have already seen, we must presume that it was the intention of the surety to execute the bond in compliance with the requirements of the statute, and unless it would be doing violence to the language of the bond itself, we must so hold. See *Crawford* v. *Ozark Insurance Company, supra.*

(5) The general rule now is that in computing the time, whether from the date or the day of the date, or

from a certain act or event the day of the date of the event is to be excluded. That is to say, the general rule is that in computing the time, the first day is to be excluded, and the last day is to be included. The reason for the rule that in the computation of time, the first day will be excluded is that the law takes no notice of fractions of a day except in certain cases where the hour itself becomes material; and time is not, therefore, computed from the hour of the day on which the event happens to the corresponding hour of the day of performance, but the computation is from the day when the act was done. Such day is regarded as a point of time, and the computation begins from the expiration of such day, as if counted it would fail to give the party affected the whole of that day, but would give only a fractional part of it. See case note to *Halbert et al.* v. *San Saba Springs Land & Live Stock Ass'n,* 49 L. R. A. 193; see, also, note to 15 L. R. A. (N. S.) 686; 38 Cyc. 317, *et seq.*

We have followed this general rule in the case of taking appeals and in construing the statute of limitations. See *Connerly* v. *Dickinson,* 81 Ark. 258; *Peay* v. *Pulaski County,* 103 Ark. 601.

By section 4337 of Kirby's Digest, every insurance company is required, within sixty days after the 1st of January, to file with the auditor a statement of its business for the preceding year. By section 4338 each company is likewise required to file with the auditor at the same time a statement showing its net receipts for the year ending December 31, preceding, and is required to pay into the State treasury "on or before the 1st day of March a tax of 2 per cent of such net receipts."

(6) Section 4339 provides for the giving of the bond and that it shall be renewed annually. There is nothing in any of these sections of the statute that indicates that the law-makers intended that the period of time constituting the term of the bond should be contrary to the general rule above announced. Therefore, we are of the opinion that the first day should be excluded and the last day included in compliance with the general rule on the subject. This would give the auditor all of the first day of March

in which to perform all the duties required of him by the
statute.  The companies then that desired to do business
in the State could all be ready to proceed on the second
day of March.

Then when the bond was required to be renewed, all
of the 1st day of March would be given the companies to
file their renewal bond, and on this day the old bond would
be in force and the liability of the new surety would com-
mence on the succeeding day.  The surety to the bond in
question seems to have thought this a proper construction
of the statute for the term of the bond was "for a period
of one year ending March 1, 1913."

The fire in question occurred about daybreak on the
1st day of March, 1913, and we are of the opinion that the
appellant company is liable for the loss.

It is next contended by counsel for appellant that the
proof does not sustain the finding of the chancellor as to
the amount of cotton destroyed by the fire; but we do not
agree with them in this contention.  A detailed statement
of the evidence on this point and a specific review of it
would be without any value.  The proof of loss sent in on
the 29th day of March, 1913, contained a specific and de-
tailed statement of all the cotton lost.  Evidence of wit-
nesses was adduced at the trial which tended to show that
all of these 168 bales of cotton were destroyed by the fire,
and that their value exceeded the sum of $10,000, the
amount of the policy.  The chancellor rendered judgment
against appellant for $10,000.  We are of the opinion that
his finding is not against the preponderance of the evi-
dence, and will be upheld.

The chancellor refused to allow a penalty or attor-
ney's fee provided by Act 115 of the Acts of 1905.  Sec-
tion 1 of that act provides that in all cases where loss
occurs and the fire insurance company liable therefor
shall fail to pay the same within the time specified in the
policy after demand thereon, shall be liable to the holder
of such policy in addition to the amount of such loss for
12 per cent damages upon the amount of such loss, to-
gether with all reasonable attorney's fees for the prosecu-
tion and collection of said loss.

(7)   The insurance company became insolvent and a receiver was appointed for it on the 27th day of March, 1913. The proof of loss was not made out and sent in to the company until March 29, 1913. The appointment of a receiver suspended the corporate functions of the insurance company and its officers and agents ceased to have any authority over its property and effects. After the receiver was appointed, the corporation's officers and agents had no right to collect any indebtedness due to the corporation, to pay claims against it or dispose of any of its assets. The receiver succeeded to all the rights of the corporation and the authority to control its property and collect its assets could only be exercised by him under the direction of the chancery court. *Buchanan* v. *Hicks,* 98 Ark. 370. So, it will be seen that at the time the demand was made for the amount of the policy, the company could not legally pay same to the assured.

(8-9-10)   Under the act in question, the company is liable for the penalty and attorney's fee where it fails to pay a loss within the time specified in the policy after demand is made therefor, but in this case no demand was made within the time specified in the policy for the payment of the loss until after the receiver was appointed. As we have already seen, the officers and agents could exercise no authority over the affairs of the company after the receiver was appointed, and on that account the company was not in fault in not paying the debt within the time specified in the policy. The fact that the law interfered and released the insurance company from the payment of the penalty and lawyer's fees operated in favor of the appellant company. If the principal was not liable for the penalty and attorney's fees, it certainly could not be said that its surety would be liable therefor. We think this reasoning is recognized in the case of *North State Fire Insurance Co.* v. *Dillard,* 88 Ark. 473. As bearing on the question, see also *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389. Therefore, we are of the opinion that the chancellor was right in refusing to allow the penalty and attorney's fee.

It follows that the decree will be affirmed.

McCULLOCH, C. J., dissenting. The first section of the act of May 11, 1905, is an amendment of section 4371 of Kirby's Digest, which is a part of the act of May 23, 1901, the amendment being a provision adding other kinds of insurance companies. Notwithstanding the provision of that statute, the contract of insurance is valid and enforceable so far as the company itself is concerned. The contract was enforceable against the company, not because it was one authorized by the laws of the State of Arkansas, but because it was valid in the State of Alabama where it was entered into, and would, upon the doctrine of comity, be enforced in this State.

The question of the liability of the sureties on the bond, is, however, quite another thing. The contract may be valid and enforceable against the insurance company, and yet not fall within the terms of the surety bond, and such is, I think, clearly the state of this case. The bond was furnished by the insurance company pursuant to the laws of this State, which provided a scheme whereby foreign insurance companies might be permitted to do business here. Our first statute creating an insurance bureau, and outlining the scheme for permitting insurance companies to do business in the State, was passed April 25, 1873, but it contained no provision with respect to the requirement for giving bond. The first statute on that subject was the act of March 6, 1891, the first section of which provided that "all fire, life or accident insurance companies, individuals or corporations now or hereafter doing business in this State, shall, in addition to the duties and requirements now prescribed by law, give a bond to the State of Arkansas with not less than three good and sufficient sureties to be approved by the Secretary of State, in the sum of twenty thousand dollars, conditioned for the prompt payment of all claims arising and accruing to any person by virtue of any policy issued by any such company, individual or corporation." The act has been amended several times, but not in any particular which is important in the present inquiry. The auditor has been substituted for the Secretary of State as the official to receive and approve the bond. Other sections

of that act remain unamended. Kirby's Digest, sections 4340-41-42-43. The statute requires that the bond executed shall be "in addition to the duties and requirements now prescribed by law," which shows that the intention of the law-makers was to insert the requirements concerning the giving of bond as a part of the scheme under which the company is permitted to do business.

In dealing with the matter of giving the bond in the case of *United States Fidelity & Guaranty Co.* v. *Fultz,* 76 Ark. 410, we said: "The bond was executed pursuant to the requirement of the statute, and the obligors are presumed to have known the terms of the statute, and to have bound themselves with reference thereto."

Now, is it to be presumed that the sureties, knowing the law contemplated liability for an unlawful or unauthorized act of the company? I think not. Even compensated sureties ought to be protected by the presumption that they meant to become liable only on transactions which could reasonably be anticipated, and that unauthorized and unlawful acts of the principal are not to be deemed within the contemplation of the parties. Nor would the surety be liable under the doctrine of *ultra vires,* as laid down in the case of *Minneapolis Fire & Marine Mutual Ins. Co.* v. *Norman,* 74 Ark. 190, for the reason already given, that the sureties were not parties to the contract made outside of the State, and are not deemed to have had that in contemplation as a part of their suretyship.

The statute not only prohibits a company doing business in this State from authorizing contracts to be made out of the State, but it requires the auditor to investigate the condition of insurance companies, and when found to have violated that provision to revoke the license of the company. That provision emphasizes the force of the presumption that the sureties did not contract with reference to such unlawful acts, and that the statute was not intended to bind them to the extent of making them liable for contracts executed contrary to the provisions of the statute. The fact that the company itself is liable on the contract because it was valid under the laws of the place

where it was executed, does not affect the liability of the sureties, for they did not contract with reference to the laws of Alabama or any other State save those of the State of Arkansas. It is true that the language of the statute is that it shall be a bond for payment of all claims arising by virtue of any policy "upon any property situated in the State." But that language was inserted to exclude liability on the loss of property in another State, and not for the purpose of enlarging liability so as to extend to any contract made contrary to the statutes of the State. When the statute is considered as a whole in its relation to our scheme of laws on the subject of foreign insurance companies, it is obvious that the lawmakers had in mind legislation with reference to the business of the company done in this State, and not business done elsewhere. The bond was given to enable the insurance company to do business in this State, and there is no reason to suppose that they meant to protect policy holders on contracts entered into elsewhere, for the statutes have no extraterritorial effect, and could not for that reason have been intended to cover anything else except transactions occurring in this State. A contract of suretyship must, says a text writer on the subject, "have a reasonable interpretation according to the intent of the parties, as disclosed by the instrument read in the light of surrounding circumstances and purpose for which it was made." Pingrey on Suretyship, section 67. It was not within the power of the law-makers to regulate a contract made by a foreign insurance company in another State. Therefore, they are not presumed to have intended to impose a liability on the sureties with reference to such a contract.

I am also of the opinion that the majority are wrong in holding that the appellant's bond is the one liable for the loss in this case, if there is any liability at all on the part of the sureties. I think the bond executed by appellant expired with the last day of February, and that the bond executed by the Home Life & Accident Company on March 1, 1913, is the bond upon which liability rests, if any, for losses which occurred after that time. Our stat-

ute has carved out a period of time which may be termed an insurance year, and begins on March 1 and ends on the last day of February. The bond executed by the company is intended to cover that period, and, even when executed after the first day of the period, may have a retroactive effect so as to cover all losses occurring during the period. *United States Fidelity & Guaranty Co.* v. *Fultz, supra.* I attach no importance to the fact that in other decisions we have mentioned March the 1st as the date of the commencement of the bond, for that precise question was not involved in those cases, the liabilities not arising on that day. But I am convinced now, upon consideration of the statute, that the law-makers intended to make the first day of March as the beginning of the insurance year. The companies are given the whole of that day for the execution of the bond, filing the annual statement, and paying the tax required by the statute, but that does not necessarily mean that the period begins the next day. The companies are, in other words, given the whole of the first day of the period within which to make the bond, and, inasmuch as the law does not take account of parts of days, the bond given during that day covers all of that day's transactions. It may be conceded that the ordinary rule of interpretation is that where a given period is mentioned, the last date is included and the first excluded. But that rule is not an inflexible one, and does not apply where the context shows that the contrary was intended. In the very nature of this transaction, it is necessarily contemplated that the bond executed on the 1st day of March would cover the transactions of that day, otherwise a new company coming into the State and executing a bond on the last day mentioned could not do business until the following day without executing another bond. To be more explicit, suppose a new company should file with the Auditor its bond on the 1st day of March, would that bond cover transactions on that day, or would the company be bound to wait until the next day to begin business? Applying that test, it is conclusive that the Legislature meant to start the insurance year on March the 1st, and to give the whole of that day to execute bonds

which would cover transactions of that day. Of course, if the bond took effect on March 1, and ran for one year, it necessarily expired with the last day of the month of February of the next year.

My conclusion, therefore, is that there is no liability on the part of appellant for this loss. This is so on both the grounds which I have attempted to maintain.