The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff,

v.

Mrs. Edna M. HUGHES and Mrs. Lizbeth P. Hughes, Defendants.

Civ. A. No. 3211.

United States District Court
E. D. Arkansas, W. D.
May 30, 1957.

Rose, Meek, House, Barron & Nash, Phillip Carroll, Little Rock, Ark., for plaintiff.

Brockman & Brockman, Pine Bluff, Ark., for defendant, Edna M. Hughes.

Eichenbaum, Walther, Scott & Miller, Glenn F. Walther, Little Rock, Ark., for defendant Lizbeth P. Hughes.

LEMLEY, District Judge.

This cause having been tried to the Court, the Court now files this memorandum opinion in lieu of formal findings of fact and conclusions of law as authorized by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The plaintiff, The Equitable Life Assurance Society of the United States, hereinafter sometimes called Equitable, filed its bill of interpleader herein under the provisions of 28 U.S.C.A. § 1335, against Mrs. Edna M. Hughes, a citizen of Arkansas, and Mrs. Lizbeth P. Hughes, a citizen of Texas, to secure a discharge from liability with respect to the proceeds of a policy of life insurance which it executed on October 19, 1934, insuring the life of Dr. Arranda A. Hughes, who died January 8, 1956, in the amount of $2,000, and has paid into the registry of this Court the sum of $1,741.96, representing the net proceeds of the policy.[1] In addition to a discharge from liability, Equitable seeks to have the fund charged with the costs of this action and to recover out of the fund a reasonable attorney's fee.

The defendant, Mrs. Edna M. Hughes, who is the beneficiary named in the policy, and who was the wife of the insured at the time the policy was issued, has filed answer claiming ownership of the fund, and a similar claim has been made by Mrs. Lizbeth P. Hughes, the other defendant, who was the wife of Dr. Hughes at the time of his death. Each of these defendants not only claims to be entitled to the policy proceeds, but also to the allowance of a statutory penalty of 12% and an attorney's fee, as provided by Ark.Stats. § 66–514. Both defendants deny that Equitable is entitled to the allowance of its costs or to an award of an attorney's fee.

The background facts in the case, which are largely undisputed, may be summarized as follows:

The insured and Mrs. Edna M. Hughes were married on November 1, 1911 and moved to Jefferson County, Arkansas in 1914 where they resided, except for a period of time that Dr. Hughes spent out of the state studying to become an eye, ear, nose and throat specialist, until August 1939, when, as a result of marital difficulties, Dr. Hughes left Arkansas and went to Houston, Texas where he made his home until his death in 1956. As stated, the insurance in question was procured in 1934, and Mrs. Edna M. Hughes was named as beneficiary, the policy providing that the insured should have the right to change his beneficiary, but that such change should "take effect only upon its endorsement on this policy

[1] At the time of Dr. Hughes' death there was an unpaid loan on the policy, which accounts for the fact that the full face value was not paid in.

by the Society"; the premiums on the policy were paid by Dr. Hughes up until the time of his death. After going to Texas, and on December 14, 1940 Dr. Hughes obtained a divorce from Mrs. Edna M. Hughes, and at some unspecified time thereafter he married Mrs. Lizbeth P. Hughes, who survived him.

During the time that Dr. Hughes lived in Arkansas the policy was kept in an iron safe in the home which he and Mrs. Edna M. Hughes owned as tenants by the entirety, and when he left Arkansas, he did not take the policy with him. Mrs. Hughes thereafter removed the policy from the safe and turned it over to her brother, Mr. B. G. Mosley, for safekeeping, and he kept it in his lock box until after Dr. Hughes' death.

No change in beneficiary was ever endorsed on the policy, nor is there any evidence that Dr. Hughes ever attempted to make any formal change of beneficiary, or that he ever requested any forms or blanks for that purpose. On June 10, 1941, however, he did write a letter to Equitable's cashier at Houston, Texas advising that in connection with the divorce he and his former wife had had a property settlement, and that she no longer had any interest in the policy.[2] It will be noted that the letter, reproduced in the preceding footnote, refers to correspondence between Mrs. Hughes and the company, but that correspondence has not been brought into the record, nor is there any evidence as to what reply, if any, Equitable made to Dr. Hughes in connection with his letter. On March 18, 1949, almost eight years after the 1941 letter, Dr. Hughes wrote another letter to the company in which he stated: "* * * I can't find my policy, No. 9590–575, and will you please

send me copy of same." On March 30, 1949, Equitable replied to that letter and advised that a copy could not be furnished unless an affidavit, signed by the insured and beneficiary, was furnished to the effect that the policy had been lost; the company also went on to say that it understood that the policy was in the physical possession of Mrs. Edna M. Hughes. As far as the evidence shows, Dr. Hughes did not pursue the matter further.

After the death of the insured claims were made on Equitable by representatives of both defendants, and a considerable amount of correspondence resulted as the company undertook to get the claimants to settle their differences, suggesting in that connection that the monthly payments called for by the policy be made by checks payable to both claimants. Not meeting with any success along that line, a representative of the company wrote a letter to counsel for Mrs. Edna M. Hughes on July 10, 1956 advising him that in view of the situation it was planned "to institute an Interpleader proceeding in the Federal Court in the District of your client's residence." Without waiting for this to be done, Mrs. Edna M. Hughes filed a suit three days later in the Circuit Court, of Jefferson County, Arkansas, praying judgment against the company in the amount of $2,000, the full face value of the policy, plus a 12% penalty and attorney's fee. The company answered the complaint in the Circuit Court, admitted liability to the extent of $1,741.-96, alleged the existence of conflicting claims and its intention of instituting an interpleader suit in federal court, and asked that proceedings in the State court "be stayed so that a proper action in in-

2. The letter just mentioned is entirely in the handwriting of Dr. Hughes and an exact reproduction thereof is as follows: "Dear Sir: I am returning to you letter written to Mrs. Edna M. Hughes—In the Divorce settlement she secured the Home Cash settlement & a loan on my N Y Life Ins policies for $2500 in full settlement and she has no claim on this policy.

You call Mr. Allan Pattillo her atty there in Houston & he will give you the facts. You can write her & tell her according to the Divorce settlement she has no claim on the policy & you can not give her any information. Thanking you for letting me know about her letter. Yours very truly, A. A. Hughes."

terpleader can be filed in the Federal Court and that this cause then be dismissed and that the defendant herein have its costs and for all other proper relief." The instant case was commenced in this court on August 10, 1956, and the $1,741.96 was paid into the registry of the court a short time thereafter.

In support of her claim to the policy proceeds Mrs. Edna M. Hughes takes the position that she is the named beneficiary in the policy, that there has never been a change of beneficiary, that there was never any property settlement between Dr. Hughes and herself, and that her rights under the policy were not affected by the divorce decree or by the letters that the insured wrote the company in 1941 and in 1949. While, as stated, in her action in the Circuit Court Mrs. Hughes sued for the full face value of the policy, she now admits in her pleadings here that $1,741.96 is the correct amount due.

In her original answer Mrs. Lizbeth P. Hughes took the position that the rights of the parties were governed by Texas law, and that under Texas law the divorce decree, in and of itself, divested Mrs. Edna M. Hughes of all of her rights in the policy.[3] After a pre-trial conference had been held, however, she amended her answer so as to allege that the insured during his lifetime had "taken action which had in truth and in fact changed the beneficiary so that the defendant Edna M. Hughes was not the named beneficiary in the policy at the time of the death of Arranda A. Hughes." And in the pre-trial brief submitted in her behalf it is further contended that there was a property settlement between Dr. Hughes and Mrs. Edna M. Hughes in anticipation of the divorce which eliminated her rights in the policy,

and it is at least suggested in said brief that the fact that the decree "recognized a property settlement agreement" is sufficient to eliminate her rights.

With regard to the claim of the plaintiff that it is entitled to an award of costs and attorney's fee both defendants assert that plaintiff was guilty of unreasonable delay in instituting its action and for that reason should be denied such an award.

■■ Taking up first the contention of Mrs. Lizbeth P. Hughes that under Texas law the rendition of a divorce decree by the District Court of Harris County was of itself sufficient, without more, to divest Mrs. Edna M. Hughes of her status as beneficiary, which was originally the sole contention of Mrs. Lizbeth P. Hughes, we may assume for purposes of argument that Texas law would govern the rights of the parties to the proceeds of the policy, notwithstanding the fact that Mrs. Edna M. Hughes has never resided in Texas and notwithstanding the fact that the policy was issued and delivered in Arkansas, and we may further assume, again for purposes of argument, that at the time of the divorce decree the effect thereof under Texas law, as it then existed, was that asserted by Mrs. Lizbeth P. Hughes. Unfortunately, for that contention, however, the Texas Legislature in 1953 passed an act,[4] which abolished the former rule; and in the case of McCain v. Yost, Tex., 284 S.W.2d 898, the Supreme Court of Texas held that said statute applied to a case where a divorce was granted prior to the passage thereof but the insured died after the effective date of the act, there being no intervening change of beneficiary. That construction of the Texas statute by the Texas Supreme Court is, of course, binding upon us and is fatal to the conten-

---

3. For present purposes we may assume without deciding that such was the law of Texas at the time that the divorce was granted. See New England Mutual Life Insurance Co. v. Spence, 2 Cir., 104 F.2d 665, 125 A.L.R. 1281 and Texas cases therein cited; see also the Texas cases

cited in the annotation appearing in 52 A.L.R. 386, 397–399.

4. Act of May 27, 1953, Chap. 113, Page 400, Acts of the 53d Legislature of Texas, Art. 3.49–1, Vernon's Annotated Civil Statutes, Vol. 14 "Insurance Code."

tion of Mrs. Lizbeth P. Hughes based on the former rule.

Passing now to the question of whether or not there was a property settlement which divested Mrs. Edna M. Hughes of her status as beneficiary of the policy, the evidence bearing on that point was in substance as follows:

In 1933 Dr. and Mrs. Hughes purchased a home in Pine Bluff under a contract with the former owner whereby the purchase price, the amount of which was not disclosed by the evidence, was to be paid in monthly installments, and those installments were paid by Dr. Hughes. Apparently, there was an outstanding mortgage upon the property, and in October, 1938 Dr. Hughes borrowed $2,600 from the Lamar Life Insurance Company for the purpose of retiring that mortgage; this loan was evidenced by a note, signed by Dr. and Mrs. Hughes, dated October 15, 1938, and was secured by a deed of trust, likewise executed by both the doctor and his then wife, which bore the same date; those instruments called for monthly payments of $20.57, and the loan was to be retired by October 1, 1953. Thereafter Dr. Hughes made the monthly payments called for by the instruments that have been mentioned.

In 1939 marital difficulties arose between Dr. and Mrs. Hughes, and he left the home and went to the Pines Hotel in Pine Bluff, where he remained for a short time, and then he moved to a small house which he owned. In August of that year Mrs. Hughes filed a suit against her husband for separate maintenance and was awarded $75 per month, payable semi-monthly. Dr. Hughes never paid any part of the separate maintenance award, and shortly after the rendition of the decree he left Arkansas and went to Tex-

as. This action on his part placed Mrs. Edna M. Hughes in a rather straitened financial condition, and she was compelled to take in boarders, and her daughter was required to obtain employment with the telephone company.

While, as stated, Dr. Hughes never paid any of the installments of the separate maintenance award, it appears that he did continue to make the monthly payments on the home. A short time prior to the rendition of Dr. Hughes' divorce decree in December, 1940 he conveyed his interest in the home to Mrs. Edna M. Hughes but continued to make the monthly payments thereon, either directly or indirectly. The deed of trust that has been mentioned was finally released in March, 1946; a short time prior to the execution of the release deed Dr. Hughes remitted to his wife a substantial lump sum of money which she used in retiring the deed of trust; his remittance was not sufficient to entirely pay off the debt, and the balance, amounting to a few hundred dollars, was supplied by the son of Dr. and Mrs. Hughes who was then in the navy. Although Mrs. Hughes and her brother, who were the only witnesses called at the trial, denied that the action of Dr. Hughes in conveying his interest in the home to her was in any sense a property settlement or had anything to do with the Texas divorce proceedings, we think that it is fairly inferable under all of the facts and circumstances disclosed by the evidence that the real consideration for his conveyance was an understanding that Mrs. Hughes would not contest the divorce case.[5] In that connection the divorce decree recites that when the case was called for trial, Mrs. Hughes was represented by Texas counsel, but that he had announced to the court that

5. Mrs. Hughes and her brother both professed to know very little about the proceedings taken in the divorce case, and, as a matter of fact, they claimed that they never knew that a divorce had been actually granted until after Dr. Hughes' death almost 16 years after the rendition of the decree. At the time that the divorce suit was pending Mrs. Hughes was represented by Mr. E. W. Brockman, Sr., who is of counsel in the instant case but who did not appear at the trial, Mrs. Hughes being represented by Mr. E. W. Brockman, Jr., and apparently all of the details of the divorce litigation from Mrs. Hughes standpoint were handled by Mr. Brockman, Sr.

he was withdrawing the answer that had been filed in her behalf and was making no appearance for her whatever.[6]

It must be kept in mind, however, that the burden is upon Mrs. Lizbeth P. Hughes to establish by a preponderance of the evidence the existence of a property settlement which had the effect of divesting Mrs. Edna M. Hughes of her status under the policy; and while we are willing to infer that the reason for Dr. Hughes' conveyance to Mrs. Hughes was an understanding that she would not contest his divorce action, there is a complete absence of evidence which would enable us to find that the conveyance of Dr. Hughes' interest in the home constituted a full and complete property settlement between the parties, or that it was intended to affect any property other than that conveyed, or that it was intended to eliminate Mrs. Edna M. Hughes' rights under the policy in question. The letter written to the company by Dr. Hughes in 1941 cannot be considered as establishing the existence of such a settlement because the declarations therein contained are self-serving and purely hearsay. Nor do we think that the existence of a complete settlement is shown by the recitations in the divorce decree.[7] While the decree recites that it "appeared" to the court that there had been a complete property settlement, there is no specific finding of the existence of such a settlement nor are its terms set out. Moreover, it seems that the reference to a settlement was in all probability based upon the ex parte declaration of Dr. Hughes' attorney after Mrs. Hughes' lawyer had withdrawn her answer and his appearance in her behalf, and there is no showing that she was ever furnished with a copy of the decree. Under such circumstances we are convinced that she is not bound by the recitations which have been mentioned.

From what has just been said it follows that Mrs. Lizbeth P. Hughes cannot prevail upon the theory of a property settlement, and on this phase of the case it remains to be considered whether or not Dr. Hughes in his lifetime performed acts which in law amounted to a change of his beneficiary, notwithstanding the fact that the policy provisions relative to such a change were not complied with.

In support of her argument that there was a legal change of beneficiary after the divorce and prior to the death of Dr. Hughes, Mrs. Lizbeth P. Hughes relies upon the insured's letters of 1941 and 1949 heretofore mentioned, and she invokes the rule, set forth in 29 Am.Jur. "Insurance," Section 1317, that where the insured's failure to complete a change of beneficiary before his death by a return of the policy for endorsement is due to the fact that the named beneficiary withholds it from him, "his efforts, if otherwise in substantial compliance with the requirements imposed by statute or contract, will—at least as between the persons claiming as beneficiaries—be given effect, and the equitable right of the person designated by him as the new ben-

6. Mrs. Hughes emphatically denied that she had ever employed any attorney in Texas to defend Dr. Hughes' suit; but, as stated, she appears to have known very little about the details of the divorce case, and it is quite possible that Mr. Brockman, Sr. employed Texas counsel on her behalf.

7. The decree refers to a property settlement in two places. In the second paragraph it is said: "And it further appearing to the Court that a settlement of the property rights between the plaintiff and the defendant has been reached, and a settlement made thereon, and that no judgment is sought herein, settling the property rights between the plaintiff and the defendant." And the fifth paragraph recites: "It is further ordered, adjudged and decreed by the Court that no judgment be entered herein as to the community property existing between the plaintiff, * * * and the defendant, * * * as the attorney of record for the *plaintiff* has announced to the Court that a settlement of the property rights between the plaintiff and the defendant had been reached and that no judgment was desired on this question." (Emphasis added).

eficiary will prevail over the strict legal title appearing on the face of the policy." The same text then goes on to say: "It need not affirmatively appear that the original beneficiary refused on demand to give up the policy, since if his possession is established, it is a fair inference that the policy would not have been surrendered if demanded * * *." The same rule is stated in somewhat different language in 46 C.J.S. Insurance § 1175, pp. 79–81, where it is said: "On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, * * *. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy."

The rule above mentioned has been recognized in Arkansas in Pedron v. Olds, 193 Ark. 1026, 105 S.W.2d 70; Eickelkamp v. Carl, 193 Ark. 1155, 104 S.W.2d 814; and Imler v. Williams, 196 Ark. 287, 117 S.W.2d 1053. And, as a matter of fact it sems to be the law of Arkansas that a beneficiary may be changed by will or otherwise, provided that the intent to make such change is expressed with sufficient definiteness and certainty, even where the insured could have complied with the policy requirements relative to such change. See Mabbitt v. Wilkerson, 220 Ark. 270, 247 S.W.2d 201. In the case just cited, which involved an Equitable policy containing an endorsement requirement identical to the one in the policy before us, the Court, after citing Pedron v. Olds and Eickelkamp v. Carl, both supra, stated: "In these decisions it was pointed out that the bene-

ficiary has no vested right in the policy previous to the insured's death, and also that the endorsement provision in the policy is primarily for the protection of the insurer." 220 Ark. at page 272, 247 S.W.2d at page 202. On the other hand, the Supreme Court of Arkansas has also held that, "The expression of an opinion, by officers of the insurer, or desire on the part of the insured * * *" will not effect a change of beneficiary. Dennis v. Equitable Life Assurance Society, 191 Ark. 825, 831, 88 S.W.2d 76, 79. And in 46 C.J.S. Insurance § 1175, p. 77, it is said that a "mere unexecuted intention to change the beneficiary is not sufficient."

When the insured's letters to the company are read in the light of the principles above stated, we do not believe that they, whether considered separately or taken together, have the effect contended for by Mrs. Lizbeth P. Hughes. Granting that the policy was in the possession of Mrs. Edna M. Hughes, and that any demand upon her by the insured for the delivery thereof would have been a futile gesture, still, in our estimation, the insured's letters did not amount to efforts "otherwise in substantial compliance with the requirements imposed by (the) contract." Nor did he do all that could reasonably have been expected of him in attempting to divest his former wife of her status. He did not request any forms or blanks from the company for the purpose of making a change; he did not expressly state that he wanted to make any change but was unable to surrender the policy; nor did he identify any new beneficiary. All he did was to express an opinion in his 1941 letter that his former wife no longer had any interest in the policy, and that in our opinion was insufficient. None of the authorities above cited, and none that we have found, has gone so far as to hold that a mere expression of opinion by the insured to the company that a named beneficiary no longer has any interest in the policy is sufficient to effect a change of beneficiary; and we feel that to so hold would

stretch beyond reason the equitable principle upon which the rule invoked by Mrs. Lizbeth Hughes is based. Moreover, the company's letter to Dr. Hughes written in 1949 put him on notice that the company did not feel that the beneficiary had been changed but Dr. Hughes took no further action to obtain a change.

Having determined that Mrs. Lizbeth P. Hughes cannot recover the proceeds of the policy upon any of the theories relied upon by her, it follows that such proceeds must be paid to Mrs. Edna M. Hughes; and it now becomes necessary to inquire whether or not the latter is entitled to a statutory penalty and attorney's fee, and we are satisfied that she is not so entitled.

■ Section 66–514 of the Arkansas statutes, upon which Mrs. Edna M. Hughes relies in support of her claim now under consideration provides that whenever an insurance company shall fail to pay the amount due under a policy within the time specified therein, it shall be liable in addition to the amount due under the policy for a penalty of 12% and for a reasonable attorney's fee to be fixed by the court. With regard to that statute in Tollett v. Phoenix Assurance Co. of New York, D.C.Ark., 147 F.Supp. 597, 604, this Court said:

"The statute is highly penal and is to be strictly construed. National Fire Ins. Co. v. Kight, 185 Ark. 386, 47 S.W.2d 576; Broadaway v. Home Ins. Co., 203 Ark. 126, 155 S.W.2d 889; United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., D.C.Ark., 126 F.Supp. 626. Where an insurance company fails after demand to pay a claim under a policy when the same is payable and denies liability therefor, either in whole or in part, and the plaintiff recovers the entire sum demanded, then the defendant is liable for the statutory penalty and fee, even though its defense may have been in good faith and based upon reasonable grounds. Guardian Life Ins. Co. v. Dixon, 152 Ark. 597,

240 S.W. 25; American Liberty Mutual Ins. Co. v. Washington, 183 Ark. 497, 36 S.W.2d 963; Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, 69 S.W.2d 1081; United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., supra. Where, however, the insured sues for an amount less than previously demanded, or where the suit itself constitutes the original demand, and the insurance company confesses liability for the amount sued for, then the insured is not entitled to the allowance of a penalty or to an attorney's fee. National Fire Insurance Co. v. Kight, and Broadaway v. Home Insurance Co., both supra. So too, where the plaintiff, after filing suit for one sum, amends his complaint so as to demand a lesser sum, and the insurance company admits liability for such lesser amount, the statute is not applicable. De Soto Life Insurance Co. v. Jeffett, 210 Ark. 371, 196 S.W. 2d 243; Trinity Universal Insurance Co. v. Smithwick, 8 Cir., 222 F. 2d 16."

Applying the foregoing principles to the instant case, we are convinced that Mrs. Edna M. Hughes should not be allowed a penalty and attorney's fee for two reasons. In the first place, the amount of her demand in the instant case is only $1,741.96, for which sum the defendant has admitted liability, whereas her previous demands and the suit filed by her in the Circuit Court of Jefferson County were for the full face amount of the policy, namely $2,000; thus in the instant case her suit is "for an amount less than previously demanded." In the second place, Equitable has never denied liability on this policy, but has always stood ready and willing to pay the net amount due under the policy but was prevented from so doing by the dispute between the rival claimants, which involved substantial questions both of law and of fact. When Mrs. Edna M. Hughes filed her suit in the State court, the Com-

pany admitted that it owed $1,741.96 on the policy, and stated its intention of bringing an interpleader suit in federal court. Of course, it could not file a counterclaim for interpleader in the State court because that court had no jurisdiction with respect to Mrs. Lizbeth P. Hughes, a citizen of Texas. Under such circumstances we do not feel that the statute applies.

■ That an insurance company confronted with conflicting claims to policy proceeds is not subject to penalty and attorney's fee where it has never denied ultimate liability and where, upon being sued by one of the claimants, it admits liability to someone, pays the money into court, and interpleads the other claimant is established by the decision in North British & Mercantile Ins. Co. v. Equitable Bldg. & Loan Association, 185 Ark. 476, 47 S.W.2d 797. In that case a dispute arose as to who was entitled to the proceeds of a certain policy, and due to the dispute payment was not made within the time prescribed by the policy, although the insurance company offered, as Equitable did in this case, to make a draft payable to all interested parties, which was not satisfactory; a suit was filed by one of the claimants in Circuit Court, and the penalty and attorney's fee were sought in addition to the amount due under the policy; thereafter the company filed a bill of interpleader in the Chancery Court of another county and paid the money into the registry of the Court. In reversing the judgment of the Chancery Court awarding the penalty and a fee the Supreme Court said:

"We think, under the facts stated, that it was error to assess a penalty and attorney's fee. The statute * * * allowing a penalty and attorney's fee was not intended to cover cases such as this. There was no failure to pay within the meaning of the statute. The insurer had the right to demand proof of loss although the adjuster had expressed the opinion that the loss was less than the face of the policy. When this proof was made, and the loss was shown to be greater than the face of the policy, the insurer admitted its full liability and offered to pay, and demanded only that it be protected in its payment against all persons claiming an interest in the policy. This demand was not unreasonable. There was a foreclosure suit pending at the time of the loss by fire, in which it was alleged that the parties thereto had or claimed such interests in the property as required them to be made parties to the foreclosure proceeding. The insurer offered, without suit, to make a check payable to all these parties for the full amount of the policy, or to pay that amount into a court before which all parties were present, and to expedite the settlement thus proposed, it later brought, at its own expense, a suit for that purpose, and paid into the court the full amount of its liability. * * *

"Under the circumstances herein stated, no penalty or attorney's fee should have been assessed * * *." 185 Ark. at page 479, 47 S.W.2d at page 798.

The same result was reached in Dennis v. Equitable Life Assurance Society, 191 Ark. 825, 88 S.W.2d 76, wherein the Court stated: "From the foregoing discussion, it is seen that the question of a proper beneficiary was a real one. It was a matter that the parties to this controversy could not determine or settle among themselves. * * * Since the insurance company * * * made no dispute as to its liability for the fund, and was not attempting in any respect to defeat a recovery thereof, it was not error to refuse to impose the penalty or to charge attorney's fee against it. As between the appellee insurance company and other appellees, or the appellant, there was nothing to litigate * * *." 191 Ark. at page 833, 88 S.W.2d at page 80.

■ The final question to be determined is whether or not the company

is entitled to an award of costs and an attorney's fee out of the policy proceeds; it is conceded that this is a matter within the discretion of the Court, but it is urged that Equitable was guilty of such delay in filing its bill that its claim for costs and an attorney's fee should be denied; we do not think so. While it is true that Equitable could have filed its bill immediately upon being advised of the conflicting claims, and while it is true that it did not file this action until August, 1956, whereas proof of death had been furnished by Mrs. Edna M. Hughes in March of that year, there is no evidence that the company was guilty of any vexatious delay or bad faith; on the other hand the record affirmatively shows that the company was trying to get the two claimants to come to some amicable settlement, and neither claimant filed any suit until after the company had notified Mrs. Edna M. Hughes' attorney that it intended to commence this suit. Moreover, as we had occasion to say in Tollett v. Phoenix Assurance Co. of New York, supra, " * * * it should also be kept in mind that it is not always to the best interest of the claimants to the proceeds of an insurance policy for an interpleader suit to be filed too quickly, particularly in view of the fact that when an insurer does interplead, the fund may be charged with the costs and with an attorney's fee, which might be avoided by the insurer's waiting a reasonable time before filing its bill." 147 F.Supp. at page 603. We think that that language is particularly applicable here because of the comparatively small amount of money involved. Of course, the amount of the proceeds of the policy also has a bearing on the size of the fee to be awarded, and while counsel for Equitable has been required to do quite a bit of work in this case, we feel that under all of the circumstances here present, and in view of the fact that the fund involved is less than $2,000, said fund should not be charged with a fee in excess of $200, and such sum will be awarded.

Let a judgment in accordance with the foregoing be entered.