74

WILLIS–REED LUMBER COMPANY, d/b/a Willis & Sons Lumber Company, a Corporation, Plaintiff,

v.

NEW YORK UNDERWRITERS INSURANCE COMPANY, Defendant (two cases).

WILLIS–REED LUMBER COMPANY, d/b/a Willis & Sons Lumber Company, a Corporation, Plaintiff,

v.

SEABOARD FIRE & MARINE INSURANCE COMPANY, Defendant.

WILLIS–REED LUMBER COMPANY, d/b/a Willis & Sons Lumber Company, a Corporation, Plaintiff,

v.

HOME INSURANCE COMPANY, Defendant (three cases).

WILLIS–REED LUMBER COMPANY, an Arkansas Corporation with its Principal Place of Business Boone County, Arkansas, d/b/a Willis & Sons Lumber Company, Plaintiff,

v.

TRINITY UNIVERSAL INSURANCE COMPANY, Defendant.

WILLIS–REED LUMBER COMPANY, an Arkansas Corporation with its Principal Place of Business Boone County, Arkansas, d/b/a Willis & Sons Lumber Company, Plaintiff,

v.

TRI–STATE INSURANCE COMPANY, Defendant.

WILLIS–REED LUMBER COMPANY, an Arkansas Corporation with its Principal Place of Business Boone County, Arkansas, d/b/a Willis & Sons Lumber Company, Plaintiff,

v.

SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, Defendant.

Civ. Nos. 396–400, 402–404.

United States District Court
W. D. Arkansas, Harrison Division.
Nov. 30, 1956.

Eugene W. Moore, Harrison, Ark., for plaintiff in Civ. Nos. 395–400.

Walker & Villines, Harrison, Ark., for plaintiff in Civ. Nos. 402–404.

Owens, McHaney, Lofton & McHaney, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Findings of Fact

1.

The plaintiff is an Arkansas corporation having its principal place of business in the Harrison Division of the Western District of Arkansas. Each of the defendants is a citizen and resident of a state other than the State of Arkansas. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

## 2.

The President and sole stockholder of the plaintiff company is Virgil D. Willis, an attorney at law. Plaintiff owned a large retail plant which contained its building supplies and finished lumber. Plaintiff also owned a lumber processing plant which contained machinery for processing rough lumber and for manufacturing various items of finished work used in construction. The two plants were located about 400 feet apart and were in the City of Harrison, Arkansas.

On the morning of April 22, 1956, the two plants, together with all of the stock, machinery, and equipment therein, were totally destroyed by fire. On that date plaintiff had in full force and effect the following insurance on the main retail building:

| | |
|---|---|
| New York Underwriters | $ 6,500.00 |
| Seaboard Fire & Marine | 3,500.00 |
| New York Underwriters | 3,000.00 |
| Home Insurance Company | 3,000.00 |
| Home Insurance Company | 12,500.00 |
| Home Insurance Company | 2,500.00 |

With regard to the inventory in the main retail building, plaintiff was insured in the sum of $8,766.13 with the defendant, Trinity Universal Insurance Company.

The processing plant, together with the machinery and stock of lumber therein, was insured as follows:

| | |
|---|---|
| Tri-State Insurance Co. | $4,875.00 |
| Springfield Fire & Marine | 3,000.00 |

The local countersigning agents for the defendant insurance companies were John Roy Campbell Insurance Agency (for Home Insurance Company); Claude Holt Insurance Agency (for Tri-State Insurance Co. and Springfield Fire & Marine Insurance Co.); United Insurance Agency, Jake Jacobson (for Trinity Universal Insurance Co., New York Underwriters, Seaboard Fire & Marine, and Home Insurance Co.).

Jake Jacobson, Manager of the United Insurance Agency, was present at the fire, which was on Sunday, and the next day, Monday, April 23, he notified the companies he represented of the fire, stating that it was a total loss. Likewise, Claude Holt and John Roy Campbell on April 23 reported the loss to the companies they represented, said reports being made in writing on forms furnished them by the companies. Each of them reported a total loss.

On the day of the fire, the loss was inspected by Neal Todd, adjuster for General Adjustment Bureau, and by Eddie Hahn, adjuster for Light Adjustment Company. On May 3, 1956, Frank Nunnally, who then represented the General Adjustment Bureau, and Eddie Hahn visited Mr. Willis at his office. Nunnally and Hahn represented all the insurance companies who had insured plaintiff's property. Mr. Willis offered his full cooperation. He gave Mr. Hahn a copy of proofs of loss which had been prepared on all items except the merchandise inventory in the main retail building. Mr. Hahn accepted the proofs of loss, but Mr. Nunnally did not accept a copy of said proofs of loss.

On the same day, May 3, 1956, Mr. Willis, by letter, gave written notice to each of the countersigning agents of the fire loss he had sustained.

Apparently no further contact was made between Willis and the defendants until May 24, 1956, when Mr. Willis wrote United Insurance Agency, as follows:

"While it is considered that notice of fire and proof of loss is not necessary in view of the fact that I am informed that notice to the respective companies who carry fire insurance contracts on Willis & Sons Lumber Company has been given by the local agents, I desire to formally notify you that on April 22, 1956 Willis & Sons Lumber Company, Harrison, Arkansas, suffered a complete loss by fire of its property and buildings, per statements attached.

"I do not have the names of the companies with which your agency carried this insurance and if there is any further proof of loss required, if you will

furnish the necessary blanks, I shall be glad to furnish further information.

"Yours very truly,

Willis & Sons Lumber Co.

By—Virgil D. Willis

"I have one copy of a complete inventory of building materials and lumber which lumber and materials was totally destroyed by the fire which destroyed the main building. This is available to you on proof of loss. Balance due on mortgage to Jefferson Standard Life Insurance Company, covering real estate and building, is approximately $7,000.00."

Enclosed with the letter was a verified proof of loss, describing the retail building and giving its value; and listing the equipment and accessories, inventory in the retail building, giving the values thereof.

On May 25, 1956, Willis wrote the John Roy Campbell Insurance Agency as follows:

"While is is considered that notice of fire and proof of loss is not necessary in view of the fact that I am informed that notice to the respective companies who carry fire insurance contracts on Willis & Sons Lumber Company has been given by the local agents, I desire to formally notify you that on April 22, 1956 Willis & Sons Lumber Company, Harrison, Arkansas, suffered a complete loss by fire of its property and buildings, per statements attached.

"I do not have the names of the companies with which your agency carried this insurance and if there is any further proof of loss required, if you will furnish the necessary blanks, I shall be glad to furnish further information.

"The Commercial Bank of Harrison has a lien on the planing mill building, machinery and manufacturing plant to the extent of approximately $30,000.00."

Willis enclosed with the letter a verified proof of loss listing the items in the processing plant and giving the value of such items, as well as the building.

On May 25, 1956, Willis sent a similar letter and proof of loss to the Claude Holt Insurance Agency.

On June 7 and 8, 1956, Hahn and Nunnally again visited Willis in his office for the purpose of adjusting the loss. Nothing definite was accomplished, and on June 15, 1956, Willis wrote Nunnally and Hahn, giving them a history of the fire and subsequent events, and stating that "unless these losses are paid to me under the contract I shall enter suit against the companies immediately upon the expiration of the time in which you contracted to pay".

On June 21 the adjusters returned, and on June 22, 1956, Nunnally made Willis an offer to pay $34,231.60 on the main retail plant, said offer being $7,-768.40 less than the total insurance on the building (which was $42,000). Nunnally also offered to pay $37,097.49 on the inventory in the main retail building; the total insurance on the processing plant building in the sum of $10,750; $8,983.10 on the machinery in the processing plant; $4,273.24 on the lumber inventory, said amount being one-half of the inventory. Willis refused to accept the offers on the main retail building, the inventory on the main retail building, and the lumber and machinery in the processing plant. Willis was willing to accept the offer on the processing plant building.

On June 25, 1956, plaintiff filed suits in the Boone County Circuit Court against the defendants, New York Underwriters Insurance Co., Seaboard Fire & Marine, and Home Insurance Co. These suits were based on the loss of the main retail building.

On June 27, 1956, Nunnally wrote Willis as follows:

"You wrote the United Insurance Company on May 24th and John Roy Campbell Insurance Agency on May 25th, 1956 reference above claim under policies listed above. In accordance with request in the second paragraph of those letters, we are attaching necessary blanks

for your convenience for furnishing further information."

On July 2, 1956, Willis replied to Nunnally's letter of June 27. Willis again gave the history of the fire and subsequent proceedings, and called attention to the fact that on June 25, 1956, he had filed complaints against some of the companies. Willis reiterated his willingness to furnish Nunnally any information that might be needed.

On July 9, 1956, plaintiff took a nonsuit in the actions that he had filed on June 25, 1956. However, on July 13, 1956, the same suits were refiled in the Boone County Circuit Court. On August 1, 1956, Willis talked to Nunnally on the telephone and informed Nunnally that he would accept the offer on the inventory. However, Nunnally stated that his offer was a "package deal" and that he would not recommend to his companies the acceptance of Willis' agreement to accept part of Nunnally's offer.

On the same date, August 1, 1956, the defendant insurance companies removed to this court the cases which had been refiled in the State court on July 13, 1956. These cases are now numbered 395 to 400, both inclusive, in this court.

3.

On August 8, 1956, plaintiff filed a suit in the Boone County Circuit Court against the defendant, Springfield Fire & Marine Insurance Co., said suit being based on the loss to the processing plant and contents. That action was removed to this court on August 30, 1956, and is now numbered 404.

On August 18, 1956, plaintiff filed an action in this court against the defendant, Trinity Universal Insurance Co., said action being numbered 402 and being based on the loss to the inventory in the main retail building. On the same date, August 18, 1956, plaintiff filed an action in this court against the defendant, Tri-State Insurance Co., said action being number 403 and being based on the loss to the processing plant building and contents.

4.

On August 15, 1956, the defendants in Civil Actions Nos. 395–400, inclusive, filed answers admitting the issuance of the respective policies, admitting that the policies were in full force and effect, and admitting that the building was completely destroyed by fire. The defendants further alleged:

"The defendants deny that written notice as required by the policy contracts was given to the defendant companies on the 24th day of April, 1956, and deny that a written, verified, proof of loss, according to the terms of the contracts of insurance, was tendered the defendants on the 3rd day of May, 1956. The defendants deny that they have ever received written notice of the aforementioned loss as required by the policies of insurance, and deny that they have ever received a sworn proof of loss from the plaintiff. It is alleged that the policies of insurance sued on herein require that a proof of loss be furnished to the defendants and that, by reason of the failure of the plaintiff to furnish such proof of loss, the plaintiff's claim is barred, or, in the alternative, that this suit is premature and cannot be maintained until such proof of loss has been furnished."

On August 31, 1956, in Civil Actions Nos. 395–400 each defendant amended its answer to allege the following:

"1. The defendants have heretofore tendered to the plaintiff the principal sum sought in the complaints of the plaintiff, together with the interest to which it is entitled and the accrued costs incurred in the institution of this action.

"2. The plaintiff has to the time of the filing of this amendment refused to accept such offer.

"3. The defendants, by this answer, do hereby tender to the plaintiff the principal sums sought in the complaints, together with the interest and accrued costs as aforemen-

tioned. The defendants stand ready to make payment of such sums at any time said amounts will be accepted by the plaintiff."

In Civil Action No. 404, on August 30, 1956, the defendant, Springfield Fire & Marine Insurance Co., filed its answer which is substantially the same as the amended answer in Nos. 395–400, i. e., the defendant alleged a tender of the principal sum, plus interest and costs, to the plaintiff.

On August 31, 1956, a pretrial conference was had and an order was entered consolidating Civil Actions Nos. 395 to 400, inclusive, and Civil Action No. 404 for trial on the question of statutory penalty and attorneys' fees.

A few days before the pretrial conference defendants' attorney had called Willis and stated that he was tendering the face amount of the policies in question. At the pretrial conference plaintiff accepted the tender, reserving the question of penalty and attorneys' fees.

In Civil Actions Nos. 402 and 403 the defendants filed answer on September 11, 1956, alleging tenders to the plaintiff of the principal amount sued for, together with interest and costs. On September 19, 1956, Civil Actions Nos. 402 and 403 were consolidated with the other actions for trial, and on that date the cases were tried to the court without a jury, on the question of plaintiff's right to recover statutory penalties and attorneys' fees.

5.

On or about June 25, 1956, Willis employed Eugene W. Moore, an attorney, to represent him in the actions which are now numbered 395 to 400. Sometime later Willis employed Walker and Villines to represent him in the actions that are now numbered 402, 403, and 404. Willis' attorneys did a substantial amount of work in the preparation and trial of the cases.

6.

Each of the policies contained the following provisions:

"*Requirements in case loss occurs*. The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value, and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by the Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof, were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

\*    \*    \*    \*    \*

"*When loss payable*. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company, expressed in writing or by the filing

with this Company of an award as herein provided."

7.

The two buildings burned simultaneously, and it was thought by all parties that arson was involved. The State Fire Marshal, sheriff, and other officers investigated the fire but no conclusion was reached as to who may have set the fire.

8.

In addition to the insurance companies involved in the instant cases, there were other insurance companies who had issued policies to plaintiff. Some of these other insurance companies were represented by Hahn, the adjuster for Light Adjustment Co., and these companies have heretofore paid plaintiff the amount owed by them.

Nunnally, the adjuster for General Adjustment Bureau, represented all the insurance companies involved in the instant cases.

## Discussion

The face amount of each of the policies in the instant cases, together with interest and actual court costs, has been paid by defendants to plaintiff in accordance with the pretrial order of August 31, 1956. The issue before the court is whether plaintiff is entitled to recover statutory penalties and attorneys' fees.

Section 66-514, Ark.Stats. (1955 Supp.), provides:

"In all cases where loss occurs on and the * * * fire * * * insurance company * * * liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such * * * firm * * * shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve (12) per cent damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorney's fee * * * to be taxed up as a part of the costs * * *."

The purpose of the statute is to reimburse the insured for expenses incurred in enforcing the contract, and the statute, being highly penal, should be strictly construed. See, United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., D.C. W.D.Ark., 126 F.Supp. 626, 638, and cases cited therein.

In order to avoid payment of the statutory penalty and attorney's fee the insurance company must pay the loss "within the time specified in the policy". In the instant cases each of the policies provided that the loss would be paid within sixty days after proof of loss was received by the company. Proofs of loss were furnished by plaintiff to defendants on May 24 and 25, 1956, and defendants had sixty days thereafter in which to pay the loss. The six suits (now numbered 395-400) were filed by plaintiff on June 25, 1956; nonsuited July 9, 1956, and refiled July 13, 1956. Thus, at the time the actions were filed and at the time they were refiled sixty days had not elapsed since the filing of the proofs of loss.

Plaintiff contends that these suits were not premature since he offered defendants' adjuster, Nunnally, proofs of loss on May 3, 1956, and since defendants denied liability on June 22, 1956. As to the first contention, the proofs of loss were not complete on May 3 and defendants' adjuster had no duty to accept the uncompleted proofs. As to the second contention, it is true that if an insurance company denies liability the insured may file suit immediately on the policy. Home Insurance Co. of N. Y. v. Williams, 201 Ark. 460, 468, 145 S.W.2d 743; Locomotive Engineers Mutual Life & Acc. Ass'n v. Vandergriff, 192 Ark. 244, 247, 91 S.W.2d 271; Globe & Rutgers Fire Insurance Co. v. Batton, 178 Ark. 378, 10 S.W.2d 859; Fire Ass'n of Philadelphia v. Bonds, 171 Ark. 1066, 1074, 287 S.W. 587.

But in the instant cases defendants did not deny liability on the policies. On June 22, 1956, defendants' adjuster

made plaintiff a compromise offer, which plaintiff refused to accept. The adjuster did not say that the companies were denying liability on the policies, and his action in making a compromise offer cannot be construed as a denial of liability by the defendants.

The court is convinced that these suits (395–400) were premature and that plaintiff cannot recover penalties or attorneys' fees on these actions. St. Paul Fire & Marine Insurance Co. v. Womack, 122 Ark. 396, 183 S.W. 203. See also, Taylor v. Mutual Life Insurance Co. of N. Y., 193 Ark. 251, 98 S.W.2d 944; Missouri State Life Insurance Co. v. King, 186 Ark. 983, 57 S.W.2d 400; North British & Mercantile Insurance Co. v. Equitable Building & Loan Ass'n, 185 Ark. 476, 47 S.W.2d 797.

A different situation exists, however, with regard to Civil Actions Nos. 402, 403, and 404. No. 404 was not filed until August 8, 1956, and Nos. 402 and 403 were not filed until August 18, 1956. These actions were filed almost four months after the fire and more than sixty days after plaintiff furnished defendants verified proofs of loss.

Defendants assert three defenses to plaintiff's claim for penalties and attorney's fee on these three suits. First, defendants contend that plaintiff made no demand as required by the statute. This contention is wholly without merit. Under the Arkansas law it is not necessary for the insured to make a formal demand for payment of the policy before the penalty for its nonpayment will attach. "It is only necessary to show facts from which it can be reasonably inferred that the company understood that payment was demanded and that it refused to make the same." Metropolitan Life Insurance Co. v. Shane, 98 Ark. 132, 137, 135 S.W. 836, 839. See also, Trinity Universal Insurance Co. v. Smithwick, 8 Cir., 222 F.2d 16; New York Underwriters Fire Insurance Co. v. Malham & Co., 8 Cir., 25 F.2d 415; Phoenix Insurance Co. v. Fleenor, 104 Ark. 119, 148 S.W. 650.

In the instant cases plaintiff not only orally requested payment but on June 15, 1956, he wrote defendants' adjuster stating that "unless these losses are paid to me under the contract I shall enter suit against the companies immediately upon the expiration of the time in which you contracted to pay." Certainly this was a sufficient demand under the statute.

Defendants' second defense to these suits is that the proofs of loss submitted by plaintiff were insufficient and that the companies were awaiting further information when the suits were filed. This defense cannot be sustained. The proofs of loss submitted by plaintiff on May 24 and 25 substantially complied with the policies and were sufficient thereunder. In fact, defendants' adjuster, after receiving the proofs of loss, conferred with Willis on June 7 and 8 and again on June 21 and 22, without making any objection to the sufficiency or form of the proofs of loss. It was not until June 27, two days after the first suits were filed, that defendants' adjuster wrote plaintiff sending "necessary blanks for your convenience for furnishing further information". The letter did not state what further information was desired, and there is nothing in the record to show that any information was needed that was not contained in the proofs of loss which had been furnished by plaintiff. Compare, American National Insurance Co. v. Westerfield, 189 Ark. 476, 481, 73 S.W.2d 155.

As above stated, the court is of the opinion that the proofs of loss submitted by plaintiff were sufficient and that he was not required to submit new proofs of loss.

The remaining contention of defendants is that plaintiff had made an offer on August 1 to accept certain amounts on the inventory losses and that defendants were entitled to a reasonable time within which to accept said offer. The difficulty with this contention is that defendants' adjuster advised plaintiff on August 1 that the offers he had made the

82

plaintiff were a "package deal" and that he would not recommend to his companies that they accept plaintiff's offer of August 1, 1956. And it was not until the latter part of August—four months after the fire and three months after the proofs of loss were made—that defendants offered to pay the amount claimed by plaintiff.

■ It may be that defendants were acting in good faith in attempting to ascertain whether arson was involved and whether it was attributable to plaintiff's President, but good faith is no defense under the statute. Life & Casualty Insurance Co. of Tenn. v. Wiggins, 224 Ark. 377, 273 S.W.2d 405.

The court is convinced that defendants did not pay within the time specified in the policies, that they had no valid excuse for failing to pay, and that under Section 66–514, Ark.Stats., they are liable to plaintiff for 12 percent penalty plus attorney's fees. The court is of the opinion that a reasonable attorney's fee in Civil Action No. 402 is $800; in Civil Action No. 403, $450; and in Civil Action No. 404, $250.

### Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of these actions.

2.

In Civil Actions Nos. 395 to 400, both inclusive, plaintiff's suits were premature and plaintiff is not entitled to recover penalties or attorneys' fees.

3.

In Civil Action No. 402 plaintiff is entitled to recover a penalty of $1,051.94, this sum being 12 percent of $8,766.13, the amount due on the policy, plus a reasonable attorney's fee of $800, said attorney's fee to be taxed as part of the costs in said case.

4.

In Civil Action No. 403 plaintiff is entitled to recover a penalty of $585, this sum being 12 percent of $4,875, the amount due on the policy, and a reasonable attorney's fee of $450, said attorney's fee to be taxed as part of the costs in said case.

5.

In Civil Action No. 404 plaintiff is entitled to recover a penalty of $360, this sum being 12 percent of $3,000, the amount due on the policy, and a reasonable attorney's fee of $250, said attorney's fee to be taxed as part of the costs in said case.

Judgment in accordance with the above should be entered.