MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* BOWMAN.

4-7873 193 S. W. 2d 480

Opinion delivered April 1, 1946.

1002

*Louis W. Dawson* and *Moore, Burrow, Chowning &
Hall,* for appellant.

*Shaver, Stewart & Jones,* for appellee.

SMITH, J. In the judgment from which is this appeal,
there was a recovery of accumulated disability benefits
under a $15,000 life insurance policy, together with the
statutory penalty and attorneys' fees, on account of al-
leged total and permanent disability of the insured, oc-
curing and existing while the policy was in force.

The policy was issued May 2, 1925. A growth de-
veloped in the insured's throat, which was malignant in
character, and in the operation made necessary thereby,
his left vocal cord was removed, since which time he can
only speak in a whisper. For two months after his opera-
tion he was not permitted to speak at all.

Insured owned a large plantation, which he had per-
sonally supervised, and was also a stock raiser, and he
testified that, on account of his operation, he was com-
pelled to abandon both these occupations, and had turned
over all his business to his son. He formerly visited his
plantation daily, and remained there from dawn until
dark, but he now goes there only two or three times each
week, and remains there only about thirty minutes. He
was 51 years of age at the time of his trial, and had al-
ways enjoyed vigorous health prior to his throat trouble.

The insured testified that he turned his business interests over to his son because of his inability to attend to them. He was unable to give his tenants and employees instructions without getting near enough to be heard by them when he spoke in a whisper, and that the attempt to carry on a conversation, even for a few minutes, caused strain and exhaustion, which induced nervousness, dizziness and headache.

The insured had used machinery to a large extent in the operation of his plantation, which he testified he had sold because he could not give proper and necessary direction in its operation. When he wished to give directions in the use of this machinery, his hay binder and his tractors, it was necessary to stop the machines so that the operators thereof could hear and understand his directions.

He grew spinach for the market, and the cutters were usually women, boys and girls, who required constant, and patient overseeing in their work. Old stock had to be left in the field, and yellow leaves must be stripped. Washing, rinsing, packing, icing and loading the spinach required considerable directions, which he was unable to give.

He owned something like 185 head of cattle and had ridden a horse as he looked after them, driving them from a used pasture to a fresher one, all separately inclosed. In driving these cattle from one pasture to another, the use of his voice was required, and when he lost his voice he could no longer perform that labor.

This and other testimony, somewhat similar, was, in our opinion, sufficient to support the verdict of the jury that insured had become permanently and totally disabled from following the usual and ordinary pursuit of his employment, although he had not become helpless and was able to render service in the sale of his cattle and farm products.

Dr. Daubs testified that the fact that the growth was malignant, a fact which appears to be undisputed, would

require the patient to be cautious and careful in the way he used his voice, otherwise there might be a return of his trouble. This doctor and other throat specialists testified that the removal of the vocal cord requires an effort to make a sound, and that the effect of this effort is tiring, as a greater use of the lungs is required. The medical testimony on behalf of both insured and insurer was to the effect that if malignancy did not recur, a scar would eventually form, and that in many instances the ability to speak would be restored, but not in a full, natural tone of voice. We are not concerned with the prognosis of the operation. The policy sued on provides that the company shall have the right at any time, and from time to time, but not oftener than once a year, to demand that the insured furnish the insurer proof of the continuance of his disability, and if it were made to appear that the disability had ceased, no further disability benefits would be paid. However, as we have said, the testimony shows that presently and at the time of the trial, the insured was permanently disabled and so long as this disability continues he will be entitled to the benefits for which the policy provides.

We have many cases which discuss and define the terms total and permanent disability within the meaning of insurance policies such as the one here under consideration. A number of cases are collected and cited in the opinion in the case of *Aetna Life Ins. Co.* v. *Person,* 188 Ark. 864, 67 S. W. 2d 1007, and others still are cited in the case of *Met. Life Ins. Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681.

The latest case in our reports on this subject is that of *North American Ins. Co.* v. *Branscum, ante,* p. 579, 191 S. W. 2d 597. This case collects a number of earlier cases and again announces the rule frequently approved, which is stated in 29 Am. Jr. 872 as follows: ''The rule prevailing in most jurisdictions is that the 'total disability' contemplated by a sickness or accident insurance policy, or the disability clause of a life insurance policy, does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather such a dis-

ability as renders the insured unable to perform all the substantial ánd material acts necessary to the prosecution of his business or occupation in a customary and usual manner.''

No complaint is made of the instructions under which this issue was submitted to the jury, and the testimony was, in our opinion, sufficient to require its submission and to support the finding that appellee was disabled within the meaning of the policy sued on.

It is insisted that, in any event, the verdict was excessive. In one of the instructions given as to the extent of liability, over the objection of the insurance company, the jury was told that, if there were a finding in favor of the insured as to liability, the verdict should be for the sum of $1,350, this being upon the theory that the right to recover arose when the disability occurred, whereas, the insurance company insists that there was no right to recovery for any period of time prior to the notice of disability which was furnished March 21, 1945.

We have, therefore, the question, whether right to recover for the disability, should be computed from the date when the notice of disability was given, or from the date of its occurrence.

To sustain its contention the appellant insurance company cites and relies upon the opinion in the case of *Smith* v. *Mutual Life Ins. Co.,* 188 Ark. 1111, 69 S. W. 2d 874. There is some ambiguity in this opinion, arising out of the fact that it states only the date when the notice of disability was given, and does not state the date when the disability occurred. That suit was against the appellant here, and the policy here sued on is identical with the one there construed. That opinion reviewed earlier cases on the subject, and held that their effect was to hold ''that liability attached upon causation of the injury suffered, but that the cause of action on such liability accrues only after the filing of the proof of disability'' and ''the making of proof of loss was not treated or considered as a condition precedent to liability . . . but

it was treated as a condition precedent to the right of recovery.''

The later cases of *Equitable Life Assur. Co.* v. *Felton*, 189 Ark. 318, 72 S. W. 2d 1049, and *Fidelity & Deposit Company* v. *Frazier,* 190 Ark. 833, 81 S. W. 2d 915, written by the Chief Justice, who wrote the opinion in the Smith case, *supra,* interprets for the court the Smith case as having held that, while the right to sue did not exist until notice of the disability had been given, yet when given, the right exists to recover for the disability and was enforceable from the date when the disability occurred. In the Felton case, *supra,* disability dated from May 3, 1930, but proof thereof was not made until March 10, 1933, yet recovery of disability benefits between those dates was upheld. That opinion cites the case of *Missouri State Life Ins Co.* v. *Case,* 189 Ark. 223, 71 S. W. 2d 199, in which case it was held, to quote a headnote that: ''Unless by inescapable language of the policy notice of disability and proof thereof are made conditions precedent to recovery under disability clauses, it is the existence of disability that fixes liability and not proof thereof.''

In the Frazer case, *supra,* Chief Justice JOHNSON, speaking for the court, said: ''In the recent case of *Smith* v. *Mutual Life Ins. Co.,* 188 Ark. 1111, 69 S. W. 2d 874, which arose over provisions of a policy of insurance not materialy different from the one here under consideration (which are the identical provisions contained in the policy here sued on), we held that liability arose against the insurer and in favor of insured when the insured suffered total and permanent disability unless the provisions of the policy were such as to make proof of loss a condition precedent to liability. We expressly held in the Smith case that the provisions of said policy which required proof of loss were not a condition precedent to liability. See *Aetna Life Ins. Co.* v. *Davis,* 187 Ark. 398, 60 S. W. 2d 912; *W. O. W.* v. *Meek,* 185 Ark. 419, 47 S. W. 2d 567; *Aetna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.''

We conclude, therefore, that the instruction permitting a recovery from the date the disability occurred is not erroneous, and as no error in the record appears, the judgment must be affirmed, and it is so ordered.