DeSoto Life Insurance Company *v.* Jeffett.

4-7948 196 S. W. 2d 243

Opinion delivered July 8, 1946.

Rehearing denied September 30, 1946.

*John C. Sheffield*, for appellant.

*Dinning & Dinning*, for appellee.

Minor W. Millwee, Justice. Appellee, Dr. W. F. Jeffett, instituted this action on October 8, 1945, for recovery of monthly payments for total disability alleged to be due under a sick and accident policy issued to him by appellant, DeSoto Life Insurance Company, on November 1, 1943. The policy provided for payments of $200 per month so long as insured was totally disabled from accidental injury, or $100 per month for a maximum of three months in case of partial disability.

Appellee practiced dentistry in Helena, Arkansas, for more than 30 years prior to November, 1944. On November 12, 1944, appellee, while on a hunting expedition, suffered an injury to the right side of his face from a severe recoil of a shotgun which he was firing. The injury resulted in a paralysis of the 7th nerve of the right side of the face, a condition which is called Bell's Palsy. This nerve controls the lachrymal gland of the right eye and paralysis of the nerve prevented appellee from closing his eyelid, and caused the right side of the face to be drawn. Any concentration of close vision causes the eye to be flooded with tears and the vision is blurred. A recovery from Bell's Palsy may usually be expected within three or four months, but if recovery is not had within six months, the injury becomes permanent.

Appellee made due proof of total disability and payments of $200 per month were made for a period extend-

ing from November 15, 1944, to February 15, 1945. The payments for March, April and May, 1945, became delinquent. A claim adjuster for appellant called on appellee in May, 1945, and, according to the testimony of appellee, explained that the delay in payments was due to shortage of help, and the adjuster assured appellee that he would get the matter adjusted on his return to Little Rock and send appellee a check. Appellee's right to recover the delinquent payments was not questioned. Appellee told the adjuster that many of his patients were anxious for him to resume his practice and that he would like to go on partial disability temporarily to ascertain whether he could recover his health sufficiently to enable him to discharge his duties.

On May 14, 1945, Logan, the claim adjuster, wrote a letter to appellee, enclosing a check for $200 for disability for one month. Logan stated in the letter that he had advised the company of appellee's intention to try to resume his practice. Appellee replied to this letter on May 21, 1945, stating that he was at a loss to know why the company sent only $200 when they owed him $600, and that he would call at the Little Rock office within a few days for a more correct adjustment of the claim.

On May 24, 1945, appellee called at the Little Rock office of appellant where he signed the following instrument: "In consideration of the sum of $400 paid to me this 24th day of May, 1945, I do hereby release the DeSoto Life Insurance Company from the total disability clause in Policy No. 4899-HA and agree to go on partial disability according to the terms of Policy No. 4899-HA from May 15, 1945, from disability due to Bell's Palsy or eye trouble caused from the aforesaid disability. Signed, W. F. Jeffett."

Appellee testified that, in the conversations leading to the signing of the above instrument, there was never any suggestion or intimation by Logan, or the officers of the company, that the company's liability for total disability payments in the future would be terminated. Appellee voluntarily suggested that the total disability

provision of the policy be temporarily suspended and that he go on partial disability in order to determine whether he could regain his health sufficiently to enable him to perform his duties. Appellee further testified that this suggestion was agreed to by Logan, and he trusted the latter to draw the agreement as it had been made. Logan retired to another office to dictate the agreement, and upon his return undertook to read it to appellee. Appellee signed the instrument without reading it, believing it was in accord with the agreement they had reached. He did not hear the word "release" used by Logan when the latter undertook to read it and was not furnished a copy of the instrument. According to appellee, Logan freely admitted that the company owed him $400 when he agreed to go on partial disability, and the company's liability for the delinquent payments for total disability was never questioned.

Appellee drew partial disability payments from May 15, 1945, to August 15, 1945, but was only able to work an hour or two on the days he attempted to perform his duties during the three-month period. On August 18, 1945, appellee collapsed while attempting to perform his duties, and, upon the advice of his physician, closed his office.

On August 20, 1945, appellant issued its check to appellee in the sum of $100 for the last payment for partial disability. Appellee accepted and cashed this check which contained a notation on its face that it was "in full settlement of claim for partial disability." This suit was instituted when appellant refused to make further payments for total disability.

Appellant's first contention for reversal is that the evidence is insufficient to establish total disability of the appellee. In addition to the facts already stated, two physicians testified that appellee, in their opinion, was completely disabled to practice dentistry because of his injury. Appellee was at all times following the injury unable to do dental surgery, which constituted a substantial portion of his usual practice. He attempted to re-

sume his practice against the advice of his physicians. Appellant offered no testimony to contradict the evidence of appellee on the issue of total disability.

In the recent case of the *Mutual Life Insurance Company of New York* v. *Bowman,* 209 Ark. 1001, 193 S. W. 2d 480, the rule frequently approved by this court as it is set out in 29 Am. Jur. 872 is restated as follows: "The rule prevailing in most jurisdictions is that the 'total disability' contemplated by a sickness or accident insurance policy, or the disability clause of a life insurance policy, does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner."

Appellant has not favored us with an abstract of instructions given and refused by the trial court. In the absence of such abstract, it must be presumed that the issue of appellee's total disability was properly presented to the jury under instructions that correctly declared the law. The testimony was, in our opinion, sufficient to support the jury's finding that appellee was totally disabled within the meaning of the policy.

It is next insisted that the signing of the purported release by appellee on May 24, 1945, and the acceptance of the check for final payment of partial disability on August 20, 1945, constitute a complete accord and satisfaction of all claims for disability under the policy. In answer to this contention, appellee insists that there was no meeting of the minds sufficient to create a binding contract between the parties in the execution of the release. It is further insisted that there was no consideration to support the release as an accord and satisfaction.

It may first be noted that the check accepted by appellee "in full settlement of claim for partial disability" made no reference to the claim for total disability so that, if there was an accord and satisfaction of the

appellant's liability for future payments for total disability, it must arise from the execution of the purported release. The release was prepared by an agent of the appellant in the course of a conference for its benefit, and under these circumstances, the instrument is to be construed most strongly against the party preparing it. *Lee Wilson & Company* v. *Fleming,* 203 Ark. 417, 156 S. W. 2d 893. If, however, there was no consideration for the execution of the release, it becomes unnecessary for us to determine whether the instrument was otherwise valid.

It is an elementary principle of law that a contract to be valid and enforceable must be supported by a valuable consideration. An accord and satisfaction, being a contract, must be founded on a proper consideration consisting of some benefit to the creditor or detriment to the debtor in order to be effectual and valid. 1 C. J. S., p. 473; 1 Am. Jur., p. 235. In the case of *Feldman* v. *Fox,* 112 Ark. 223, 164 S. W. 766, this court said: "If no benefit is received by the obligee except what he was entitled to under the original contract, and the other party to the contract parts with nothing except what he was already bound for, there is no consideration for the additional contract concerning the subject-matter of the original one."

The case of *McGehee* v. *Cunningham,* 181 Ark. 148, 25 S. W. 2d 449, was an action for breach of a contract of employment, in which the employer contended that the acceptance of his check, after his cancellation of the contract, for the amount of salary due to the time of such cancellation, constituted an accord and satisfaction. There, this court said: "Appellee denied that he had received the check in satisfaction of his demand under the contract. On the contrary, he contends that there was no controversy about the sum paid him. This was a liquidated demand payable in any event, and there was no controversy about the indebtedness which the last check paid. This check paid the salary up to January 1, 1928, and there was no controversy about it. The

controversy was over the salary accruing thereafter, and nothing was paid on that account. The payment was upon an undisputed item, which was payable in any and at all events, and we think the court was correct in refusing to hold, as a matter of law, that there had been an accord and satisfaction . . .''

It is held generally that the payment of a liquidated, undisputed, matured obligation does not furnish a consideration for the release of any additional obligation. In 1 C. J. S., Accord and Satisfaction, § 29, it is said: ''The payment of a sum admittedly due and payable furnishes no consideration for the discharge of an additional and distinct amount or item of liability, and does not effect an accord and satisfaction thereof.'' In the case of *Buel* v. *Kansas City L. Ins. Co.*, 32 N. M. 34, 250 Pac. 635, 52 A. L. R. 367, a $2,000 life insurance policy provided double indemnity for accidental death. Disclaiming liability for accidental death, but not for the $2,000 face of the policy, the insurer tendered and the beneficiary accepted that sum in full settlement of all claims under the policy. The New Mexico court held that such acceptance did not constitute an accord and satisfaction which barred recovery for the balance, and there said: ''There never was dispute as to liability for $2,000 because of the death of the insured. There was dispute as to any liability for accidental death, but none as to the amount to be paid if the death were accidental. By the payment made, appellee obtained nothing to which she was not entitled, and appellant gave up nothing it could rightfully retain. If the claims were to be considered separately, the death claim was liquidated and undisputed; the accident claim liquidated and disputed. If it be treated as a whole, the larger amount was liquidated, and the smaller amount paid was conceded. However viewed, we find it impossible to locate the consideration for the release of the amount here sued for.''

In support of its holding the New Mexico court cited and discussed, among others, the following cases which support the rule there announced: *Knights Templars &*

*M. L. Ins. Co.* v. *Crayton,* 209 Ill. 550, 70 N. E. 1066; *Prudential Insurance Co.* v. *Cottingham,* 103 Md. 319, 63 Atl. 359; *Woodall* v. *Pacific Mut. L. Ins. Co.* (Tex. Civ. App.), 79 S. W. 1090. In the last case cited, the Texas court held that payment by the insurer of an amount conceded to be due, under an accident insurance policy, for total disability for part of the time of such disability, is no consideration for the release by the insured of his claim for the balance of the period of total disability which the insurer denied. The court said: "Payment by a debtor of a liquidated amount, presently due, and to which he has no defense that can be urged in good faith or with color of right, is not by itself a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor . . . There being no consideration for the release, it is immaterial whether it was fraudulently obtained by the defendant, or whether the plaintiff knew of its contents, or failed to exercise reasonable diligence in ascertaining its import . . ." See, also, *Moore* v. *Maryland Casualty Co.,* 150 N. C. 153, 24 L. R. A., N. S., 211, 63 S. E. 675; and Couch, Cyclopedia of Insurance Law, vol. 7, § 1867.

In *United States Casualty Co.* v. *Vinson,* 83 Ind. App. 474, 149 N. E. 90, it was held that the payment of an amount admittedly due the beneficiary under an accident insurance policy for disability indemnity will not constitute a sufficient consideration for the release of an unliquidated amount claimed under the policy.

According to the testimony on behalf of appellee, the consideration of $400 named in the release was a matured obligation of the company for a claim of total disability for two months, the validity of which was neither disputed nor questioned by appellant. While Logan testified that he advised appellee that the company questioned his right to the delinquent total disability payments, this is stoutly denied by appellee. Appellee furnished proofs of disability monthly which were never questioned, and no request for re-examination was ever

made. Under the testimony adduced on that point, the question whether the consideration mentioned in the release was in fact a liquidated and undisputed obligation of the company was for the jury to determine. In the absence of an abstract of the instructions, it must be presumed that this question was also properly presented to, and determined by, the jury. There being no consideration for the release, it becomes immaterial to decide whether there was a meeting of the minds of the parties in the execution of the instrument.

Appellant relies on the case of *American Insurance Union* v. *Wilson,* 172 Ark. 841, 291 S. W. 417, where it was held that an accord and satisfaction was effected where the beneficiary accepted a check which stated that it was in full payment of the amount due under the benefit certificate. The undisputed evidence in that case, however, showed that there was a *bona fide* dispute as to the amount due under the benefit certificate, and it was held that the payment of the smaller sum in satisfaction of the entire claim was a sufficient consideration for the release of the balance of the amount claimed. In the instant case there was substantial evidence to warrant a finding by the jury that no dispute existed as to appellant's liability for the delinquent payments.

It is finally insisted that appellee was not entitled to a judgment for penalty and attorney's fee because he brought suit for a larger amount than he recovered. During the course of appellee's examination as a witness, and again at the conclusion of the testimony of Logan, appellee reduced the amount of his claim to $200, and offered to pay all costs that had accrued since the bringing of the suit. The reduction and offer were made with the permission of the court and without objection by appellant, and was tantamount to an amendment to the complaint to conform to the proof. If appellant had desired to avoid the penalty and attorney's fee, it should have offered to confess judgment for the amount sued for, after the reduction was made. This court so held in the case of *Life & Casualty Co.* v. *Sanders,* 173 Ark.

362, 292 S. W. 657, where it was said: "Generally it is within the discretion of the court to permit the complaint to be amended during the trial or at the close of the testimony to conform to the proof. *Duff* v. *Ayers,* 156 Ark. 17, 246 S. W. 508. But it is urged that, having brought suit and gone to trial on a demand for more than justly due, appellee could not amend his complaint by reducing the demand to the correct amount, and recover the statutory penalty and attorney's fees in addition thereto. We do not agree with appellant in this contention. If, instead of proceeding with the trial of the case and denying any liability whatever on the grounds here urged, it had either offered to pay the reduced amount, or had asked to be given the time in which to pay same as provided in the policies, appellee could not have recovered the penalty and attorney's fees, and, in addition, would have been required to pay all costs, for the reason that he demanded a sum greater than he was entitled to under the policies." See, also, *Queen of Ark. Ins. Co.* v. *Milham,* 102 Ark. 675, 145 S. W. 540; *Great Southern F. Ins. Co.* v. *Burns & Billington,* 118 Ark. 30, 175 S. W. 1161, L. R. A. 1916B, 1252, Ann. Cas. 1917B, 497.

The jury returned a verdict for $200, the sum demanded, and the trial court correctly assessed the statutory penalty and attorney's fee. We find no error, and the judgment is affirmed.