**Kelsie TOLLETT and Berthenia Tollett, Plaintiffs,**

v.

**PHOENIX ASSURANCE COMPANY OF NEW YORK, Defendant,**

**M. M. Tollett, Cross-Defendant.**

**Civ. A. No. 612.**

United States District Court
W. D. Arkansas, Texarkana Division.

Dec. 27, 1956.

Shaver, Tackett, Jones & Lowe, Boyd Tackett, Texarkana, Ark., for plaintiffs.

Arnold & Arnold, W. H. Arnold, III, Texarkana, Ark., for defendant.

Van Johnson and Joe Rosenbloom, Texarkana, Ark., for cross-defendant.

LEMLEY, Chief Judge.

This cause having been tried to the Court, and the Court having considered the pleadings in the case, the briefs that have been filed by the parties, and the evidence, both oral and documentary, introduced at the trial, and being well and fully advised, doth make the following findings of fact and doth state the following conclusions of law, to-wit:

### Findings of Fact

1. The plaintiffs, Kelsie Tollett and Berthenia Tollett, his wife, alleged to be citizens of Arkansas and actually citizens of Broken Bow, Oklahoma, brought this action in this court against the defendant, Phoenix Assurance Company of New York, a New York corporation, authorized to do business in Arkansas and doing business in this State, to recover upon a policy of fire insurance issued by the defendant's agent, De-Queen Abstract Company, Inc. of De-Queen, Sevier County, Arkansas, to the plaintiffs, insuring them against loss by fire to a dwelling house and contents located in Sevier County four miles north of the town of Lockesburg. In their complaint the plaintiffs alleged that they were entitled to recover under this policy the sum of $6,000, representing the full value of the dwelling above mentioned, which was totally destroyed by fire on February 22, 1956, and $3,000 representing the alleged value of the personal property inside the house which was also destroyed. In addition to demanding the sum of $9,000 as compensation for their alleged loss, the plaintiffs alleged that after demand made upon it, the defendant had failed and refused to pay the loss, and was, therefore, liable in addition for a statutory penalty of 12% and for a reasonable attorney's fee by virtue of the provisions of Ark.Stats., Section 66–514.

2. After the filing of the suit the defendant filed an answer and a counterclaim for interpleader. In its pleadings it admitted that it was liable to someone under the policy to the extent of $9,000, but denied that it was liable for any statutory penalty or attorney's fee. It further alleged that M. M. Tollett, a citizen of Texas, and the father of the plaintiff, Kelsie Tollett, was making a claim to all or part of the proceeds of the policy by virtue of his ownership of the land upon which the insured dwelling had been located; that it was a disinterested stakeholder, willing to pay the $9,000 to whomsoever the court might adjudge entitled thereto; that M. M. Tollett should be brought into the case as a cross-defendant, and that he and Kelsie Tollett and Berthenia Tollett should be required to litigate in these proceedings their conflicting claims to the fund; that M. M. Tollett should be restrained from instituting any action against the defendant based on the policy, and that plaintiffs should be restrained from pursuing their action against the defendant further; and that the defendant should be discharged from

all liability with respect to the proceeds of the policy and should be awarded its costs and a reasonable attorney's fee. In connection with its counterclaim for interpleader, the defendant paid into the registry of the court the sum of $9,000, plus an additional $100 to cover any interest or costs that might be awarded against it.

3. After the defendant's answer and counterclaim were filed, an order was made bringing M. M. Tollett into the case, and he appeared herein after service of summons upon him and asserted a claim to $3,000 of the $9,000 on deposit in the registry of the court on the theory that he owned the land on which the insured dwelling was built, that he had made certain contributions of money to the building of the house, and that certain materials from an old house formerly occupying the premises had been used in building the insured dwelling. It was his theory that under the circumstances the plaintiffs were constructive trustees for his benefit of the policy proceeds to the extent of $3,000. M. M. Tollett asserted no claim to that portion of the proceeds of the policy ($3,000) representing the value of the destroyed personal property.

4. By subsequent pleadings the plaintiffs controverted the claim of M. M. Tollett to any portion of the money in the registry of the Court, and also took the position that the defendant's counterclaim for interpleader was improper, and that the defendant was not entitled to costs or attorney's fee; and they reiterated their original contention that they were entitled to the full $9,000, plus the statutory penalty and attorney's fee.

5. From the foregoing abstract of the pleadings it will be seen that the Court is here concerned with three controversies, namely: the controversy between the plaintiffs, on the one hand, and M. M. Tollett, on the other hand, relating to the ownership of the fund in court; that between the plaintiffs and the defendant with respect to whether or not the defendant is liable for the penalty and attorney's fee; and that between the plaintiffs and the defendant as to whether or not the latter is entitled to an award of costs and a reasonable attorney's fee as an interpleader.

6. Taking up first the controversy between the plaintiffs and M. M. Tollett, the Court finds that the insured dwelling was constructed by Kelsie Tollett on lands belonging to M. M. Tollett pursuant to an agreement between the plaintiffs and M. M. Tollett that he should occupy a room in the dwelling for the balance of his life, and that he would make a will devising the land and dwelling to the plaintiffs at his death, and further finds that M. M. Tollett did in fact make such a will. Prior to the time that the insured dwelling was built, the site thereof was occupied by a four-room frame dwelling belonging to M. M. Tollett; this old building was demolished to make way for the new dwelling, and part of the lumber and materials in the old building were incorporated into the new, but the Court is unable to say from the evidence with any degree of accuracy how much the old building was worth at the time it was dismantled, or how much of the material in the old building went into the new, or what was the value of the material so utilized. While there is some evidence that Kelsie Tollett cut and sold some pine timber off of the land on which the insured dwelling was built and used the proceeds of the sale in constructing the new house, the Court is again unable to say how much, if any, of such timber was cut, or what the proceeds of the sale of such timber amounted to, or how much of such proceeds, if any, went into the construction of the insured dwelling.

After the completion of the insured dwelling, it was occupied by the plaintiffs and M. M. Tollett pursuant to the terms of their agreement until a disagreement arose as a result of which M. M. Tollett revoked his will, left the premises and went to Texas, where he has since resided. The insurance here involved was procured in January, 1956, by Kelsie Tollett and his wife, some months after the disagreement that has

been mentioned and M. M. Tollett had gone to Texas, and the premium on the policy was paid by Kelsie Tollett. The policy insured the dwelling itself to the extent of $6,000, and insured the contents of said dwelling to the extent of $4,000, making a total coverage of $10,000.

On the trial of the case the Court called M. M. Tollett to the stand on its own motion, and he testified that the subject of insurance was never discussed with him either before or after the policy was obtained, and that he did not know of the existence of such insurance until after the fire. The Court credits that testimony, which was strictly against Mr. Tollett's interest, and finds that in view of the fact that the subject of insurance was not discussed with M. M. Tollett either before or after the policy was obtained, and in view of the existing estrangement between M. M. Tollett and his son and daughter-in-law when the policy was issued, the latter in procuring the insurance were simply insuring their own interests and not that of M. M. Tollett.

7. Passing to the question of whether or not the defendant is liable for a statutory penalty and attorney's fee, the Court finds that prior to the filing of this suit, the plaintiffs never made any demand upon the defendant or any of the latter's agents for the payment of $9,000 or any other sum; that at no time prior to the filing of this suit did the defendant either admit or deny liability under the policy; that when the action was commenced, the defendant admitted liability for the full amount sued for, namely, $9,000, but alleged in good faith that there were conflicting claims to the proceeds and that it did not know whom to pay; and that it paid the money into the registry of the court and made M. M. Tollett a party to this action so that the controversy between him and the plaintiffs could be litigated.

While the plaintiffs do not contend that they ever filed any formal proof of loss, Mrs. Tollett testified that she visited the office of the DeQueen Abstract Company on a number of occasions prior to April 10, 1956, and that on March 20, 1956, she told Mr. George Allison the head of the Abstract Company, that she would take $6,000 for the house and $3,000 for the personal property in the house; Kelsie Tollett was not with her on those occasions. She and Kelsie Tollett both testified that they employed counsel in the case on April 10, namely, Mr. Boyd Tackett of Texarkana, Arkansas; that Mr. Tackett instructed them to go to DeQueen and make demand on Mr. Allison for $9,000; that they did go to DeQueen and she told Mr. Allison that unless they were paid that sum, suit would be filed, and that they had already employed an attorney; and that thereafter they telephoned Mr. Tackett and told him what they had done.

Mr. Allison testified categorically, however, that while it was true that Mrs. Tollett was in his office on a number of occasions making inquiries about the insurance, she never at any time made any demand for or insisted upon payment under the policy or mentioned any specific sum of money. He also stated that Kelsie Tollett never made any demand for or insisted upon payment under the policy or mentioned any sum of money. And he denied that on April 10, 1956, the plaintiffs were in his office and advised him that they had retained counsel or revealed the identity of such counsel. He stated in that connection that the first he learned of the employment of counsel by the plaintiffs, and the first he heard of the sum of $9,000 was after this suit was filed, and that he got that information from the defendant's attorney, Mr. W. H. Arnold, III.

While it was stipulated that if called as witnesses certain persons, including Mr. Tackett, would testify that Mr. Tackett was employed by the plaintiffs on April 10, that he instructed the plaintiffs to go to DeQueen and make demand, that they went to DeQueen and entered the office of the Abstract Company, and that later they telephoned Mr. Tackett and told him that they had made demand, such testimony standing alone would not

of itself establish that demand was actually made.

The testimony of the plaintiffs and the testimony of Mr. Allison on the issue of demand were in sharp conflict; and the Court credits the testimony of Mr. Allison and rejects that of the plaintiffs. In that connection the Court observed the attitude and demeanor of the plaintiffs while testifying, and was not impressed thereby, whereas it was impressed by the apparent candor of Mr. Allison; moreover, the interest of the plaintiffs in establishing their right to recover penalty and attorney's fee was obviously much greater than that of Mr. Allison, if indeed any he had, in seeing their claim for such defeated. In addition to those considerations, the Court is of the opinion that the testimony of the plaintiffs in other respects, including those presently to be mentioned, cannot be relied upon.

The plaintiffs testified that on the day following the fire Mr. Allison and Mr. Thomas Arnold (no relation of Mr. W. H. Arnold, III), an insurance adjuster, appeared on the scene of the fire, and told them that "it was a total loss," and that the adjuster said that they would be paid in a week or ten days. Both Mr. Allison and the adjuster testified, on the other hand, that Mr. Allison did not go to the scene of the fire with the adjuster on the day following the loss; and the adjuster testified that liability was not discussed. Such a discussion would obviously have been premature at the time since although it was obvious that the house was a total loss, and the Arkansas valued policy statute would have been applicable, there was no way for the adjuster to know what the personal property in the house was worth as he did not at that time even have a list of it. Moreover, it appears that shortly after the adjuster reached the scene, law enforcement officers also appeared and began to go over the property, which caused the adjuster to become suspicious of the origin of the fire; and, further, the adjuster had discovered from an examination of the land records of Sevier County, prior to going out to the property, that the land upon which the dwelling was located belonged to M. M. Tollett. Under such circumstances, it is inconceivable that he would have admitted liability under the policy at that time, to say nothing of advising the plaintiffs that they would be paid the face amount of the policy, $10,000, as Mrs. Tollett at one point in her testimony said that he did, although later she admitted that she may have been mistaken about that.

Mrs. Tollett also testified that on March 5 Mr. Allison told her that the adjuster would personally deliver the check in a day or two; that she saw the adjuster on March 7 and that he told her that he had not brought the check. Both Allison and the adjuster deny the making of such statements, and the testimony on behalf of the defendant was that in cases like this when a settlement is made, the check is never given to the adjuster for personal delivery to the insured but is mailed to the "procuring agent," in this case Allison, and by him delivered to the insured.

It further appeared that Mrs. Tollett prepared an inventory of the personal property in the house which totalled something over $5,000. She testified, however, that by March 20 she was willing to take $6,000 for the house and $3,000 for the contents, as "they had to have something," but she further testified that when Mr. Tackett was employed on April 10, they went over the inventory and re-evaluated the personal property and came out with a $3,000 figure. She never explained satisfactorily how she arrived at the $3,000 figure in the first place, or how as a result of the evaluation in Mr. Tackett's office she came out with the same figure, or why when the suit was ultimately filed it was not for the full sum of $10,000.

The unreliability of the testimony of the plaintiffs in the respects above mentioned, and in others that could be set forth, coupled with their interest in the case and their manner and demeanor while testifying satisfies the Court that

their testimony as to alleged demands must be rejected.

8. The action of the defendant in withholding payment of the proceeds of the policy until the filing of this suit was not due to any lack of diligence or good faith, and was justified under the circumstances.

In the first place, on the very day that the adjuster commenced his investigations he discovered that the land on which the property was located belonged to M. M. Tollett, and he also discovered that the origin of the fire was being questioned. Both of those matters were brought to the Company's attention in the adjuster's first formal report on February 29; and the defendant certainly cannot be blamed for withholding payment until those matters were looked into.

By March 28, 1956, the National Board of Fire Underwriters had advised that there was no evidence of incendiarism in connection with the fire, but by that time M. M. Tollett had employed Mr. Gordon Carlton, an attorney at DeQueen, to represent him in laying claim to a part of the proceeds. On March 22 Mr. Carlton wrote Mr. Wayne B. Hanes, State Agent of the defendant at Little Rock, and advised him that he had been retained by M. M. Tollett; that Mr. Tollett was not claiming anything on account of the personal property; and that he (Carlton) would like a conference with Hanes to try to work something out. This letter clearly indicated that M. M. Tollett was asserting a claim to that portion of the proceeds of the policy representing the house itself. Again on April 9 Mr. Carlton wrote the adjuster and told him that he was still trying to work something out between the plaintiffs on the one hand, and M. M. Tollett, on the other hand, but that it would take two or three weeks more to do it, and that if his efforts were unsuccessful, he planned to file a suit in equity to adjudicate their respective rights. Mr. Carlton testified that, as a matter of fact, he went so far as to draw a complaint to be filed naming the plaintiffs here and the Company as defendants, but that the proceedings in this court were commenced before he had filed his contemplated suit.

Mr. J. K. Rogers, the defendant's loss superintendent at Dallas, Texas, who had supervisory control over this loss, testified that based on his experience and his knowledge of the Tollett difficulty, he believed that the matter could be amicably settled. The defendant did not know that the plaintiffs had employed an attorney to represent them until Mr. Rogers received the adjuster's final report of May 14, and the adjuster testified that his information to that effect was obtained in and around DeQueen just a day or two before he submitted that report. This suit was commenced on May 16.

It is, of course, true that the defendant could have filed a bill of interpleader as soon as it learned of the M. M. Tollett claim; but the Court does not feel that it is chargeable with bad faith or vexatious delay merely because it did not do so. As stated, as late as April 9 Mr. Carlton had advised that he was still trying to work the matter out and had hopes of succeeding, and apparently the defendant did not learn until just prior to the filing of this suit that the efforts of Mr. Carlton to compose the family difficulties, as far as this policy was concerned, had failed. It should be remembered in this connection that family disputes vary in intensity and can frequently be settled; and it should also be kept in mind that it is not always to the best interest of the claimants to the proceeds of an insurance policy for an interpleader suit to be filed too quickly, particularly in view of the fact that when an insurer does interplead, the fund may be charged with the costs and with an attorney's fee, which might be avoided by the insurer's waiting a reasonable time before filing its bill.

While in view of the Conclusions of Law hereinafter set forth it is unnecessary to determine what attorney's fee would be reasonable compensation for Mr. Tackett on account of his representation of the plaintiffs, the Court does find

that the sum of $250 is reasonable compensation for Mr. Arnold for his services on behalf of the defendant in filing the counterclaim for interpleader and obtaining a discharge for the defendant. Of course, for his efforts in defending the Company against the plaintiffs' claim for statutory penalty and attorney's fee Mr. Arnold has earned much higher compensation, but the Court does not feel that he should be compensated for those services out of the fund in the registry of the Court, but should look to his client for such compensation; and it was testified by Mr. Rogers that such is satisfactory to the Company, and Mr. Arnold stated that it is likewise satisfactory with him.

### Conclusions of Law

1. This Court has jurisdiction of this cause and of the parties hereto.

2. As heretofore pointed out, M. M. Tollett has never made any claim to the proceeds of the policy in suit insofar as such proceeds represent compensation for the plaintiffs' loss of personal property, his claim being limited to that portion representing compensation for the loss of the insured dwelling. The Court has found, however, that the plaintiffs in procuring the insurance on the dwelling were simply insuring their own interests and not that of M. M. Tollett, and their interests are valued at $6,000. Ark.Stats., Section 66–1512; Tedford v. Security State Fire Insurance Co., 224 Ark. 1047, 278 S.W.2d 89. The mere fact that some materials from the old house went into the construction of the new house, and the fact, if it is a fact, that certain timber may have been cut from M. M. Tollett's land and the proceeds of the sale thereof used in the construction of the new house are not, in the Court's estimation, sufficient to engraft upon the proceeds of the policy a constructive trust for the benefit of M. M. Tollett. Hence, M. M. Tollett's cross-complaint must be dismissed. While he may have some claim against the plaintiffs for the value of his property used in the construction of the insured dwelling or for the cutting of his timber, such claim will have to be asserted by him in some other court having jurisdiction of the same.

3. Coming to the claim of the plaintiffs for statutory penalty and attorney's fee, the general principles governing the application of the Arkansas statute upon which they rely, Ark.Stats., Section 66–514, may be briefly stated:

The statute is highly penal and is to be strictly construed. National Fire Ins. Co. v. Kight, 185 Ark. 386, 47 S.W.2d 576; Broadaway v. Home Ins. Co., 203 Ark. 126, 155 S.W.2d 889; United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., D.C.Ark. 126 F.Supp. 626. Where an insurance company fails after demand to pay a claim under a policy when the same is payable and denies liability therefor, either in whole or in part, and the plaintiff recovers the entire sum demanded, then the defendant is liable for the statutory penalty and fee, even though its defense may have been in good faith and based upon reasonable grounds. Guardian Life Ins. Co. v. Dixon, 152 Ark. 597, 240 S.W. 25; American Liberty Mutual Ins. Co. v. Washington, 183 Ark. 497, 36 S.W.2d 963; Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, 69 S.W.2d 1081; United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., supra. Where, however, the insured sues for an amount less than previously demanded, or where the suit itself constitutes the original demand, and the insurance company confesses liability for the amount sued for, then the insured is not entitled to the allowance of a penalty or to an attorney's fee. National Fire Insurance Co. v. Kight, and Broadaway v. Home Insurance Co., both supra. So too, where the plaintiff, after filing suit for one sum, amends his complaint so as to demand a lesser sum, and the insurance company admits liability for such lesser amount, the statute is not applicable. De Soto Life Insurance Co. v. Jeffett, 210 Ark. 371, 196 S.W.2d 243; Trinity Universal Insurance Co. v. Smithwick, 8 Cir., 222 F.2d 16.

Applying those principles to the facts presented here, the Court is satisfied that the plaintiffs are not entitled to the benefit of the statute. Putting to one side the fact that the plaintiffs never filed any formal proof of loss, the Court has found that they did not, prior to filing suit, make any demand on the defendant, either written or oral, formal or informal, for the payment of $9,000 or any other sum. It is true that the filing of the suit itself constituted a demand, but the Company had not denied liability prior to suit, and when the action was commenced it admitted liability for the full amount sued for, and paid the money into court.

It is argued by the plaintiffs that even in its counterclaim for interpleader the defendant has never admitted that it is liable "to them" under the policy; but that, in the Court's opinion, is not material. The defendant did admit that it was liable on the policy and simply asked that it be protected against the outstanding claim of M. M. Tollett. A somewhat similar situation was presented in North British & Mercantile Ins. Co. v. Equitable Building & Loan Association, 185 Ark. 476, 47 S.W.2d 797, in which case a judgment allowing a penalty and attorney's fee was reversed. Nor is it material that this action was commenced by the plaintiffs and that the defendant interpleaded by way of counterclaim; to hold that the relative rights and liabilities of insureds and insurers under the statute are to be determined by reference to which files suit first would stimulate premature litigation and encourage races to the courthouse, which should not be done.

4. Turning now to the claims of the defendant for discharge as an interpleader and for the allowance out of the fund in court of a reasonable attorney's fee, the Court is satisfied that this is a proper case for interpleader, and that the defendant's prayer should be granted. While Mr. M. M. Tollett's claim to a portion of the policy proceeds has turned out to be without merit, that is not of controlling importance. The Federal Interpleader Act, 28 U.S.C.A. § 1335, which is a remedial statute and to be liberally construed, was designed not only to protect stakeholders from double or multiple liability but also to protect them from the trouble and expense of double or multiple litigation. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206; Metropolitan Life Insurance Co. v. Segaritis, D.C. Pa., 20 F.Supp. 739; Massachusetts Mutual Life Insurance Co. v. Weinress, D. C.Ill., 47 F.Supp. 626; and Mallonee v. Fahey, D.C.Cal., 117 F.Supp. 259. The fact that M. M. Tollett was the owner of the land on which the insured dwelling was located was brought home to the defendant immediately after the fire; by the latter part of March the defendant was on notice that he had employed an attorney to represent him and was laying claim to a portion of the proceeds of the policy, and on April 9 the Company was advised that unless a settlement could be reached between the plaintiffs and M. M. Tollett a suit would be filed on the latter's behalf. Of course, until M. M. Tollett should actually assert his claim in court, the defendant could not know what his exact theory of recovery would be. In view of his ownership of the land and his relationship to the plaintiffs it was certainly not inconceivable that he might have some enforceable claim under the policy, as, for example, a claim based upon an agreement or understanding with the plaintiffs that the policy, while in the names of Kelsie and Berthenia Tollett, should cover all interests in the property, including that of M. M. Tollett. As a matter of fact, color to that possibility was lent by the testimony of Mrs. Tollett herself to the effect that the matter of insurance was discussed with M. M. Tollett both before and after the policy was procured, and that it was the original understanding of the parties that his interests were to be protected. Unfortunately, from his standpoint, Mr. Tollett, with commendable candor, denied that portion of his daughter-in-law's testimony, and in that, as in other respects, the Court found her testimony to be untrustworthy. It

should be noted, however, that while M. M. Tollett stated that he had never discussed the subject of insurance on this property with anyone, and that the first that he knew of the existence of such insurance was after the fire, he consistently claimed up to and including the trial of the case that he was entitled to participate in the insurance proceeds.

5. As has been mentioned, the defendant in addition to the $9,000 sued for under the policy deposited in the registry an additional $100 to cover the contingencies of interest and costs. After the case was tried and the Court had announced its decision, plaintiff filed a petition for the disbursement to it of the $250 allowed it as an attorney's fee and also for a return to it of the additional $100. The plaintiff filed a response to that petition, resisting the disbursement to the defendant of the $100 and praying for interest on the $9,000 from 60 days after the fire up until the trial of the case.

There is no question that the plaintiff is entitled to interest, but not beyond the date, June 6, 1956, upon which defendant paid the $9,000 into the registry of the court. 46 C.J.S., Insurance, § 1393, page 699; Century Insurance Co. v. First National Bank of Hughes Springs, 5 Cir., 133 F.2d 789. As to the time from which such interest should begin to run, it is said in 46 C.J.S., Insurance, § 1393, page 697, that as a rule interest in a case like this begins to run "from the time when the loss is due and payable, and the amount thereof has been determined and made certain." Assuming without deciding that the defendant waived proof of loss in this case, still the amount due the plaintiffs was not determined and made certain until the suit was filed, since before that time the only figures that had been submitted to the defendant relative to the destroyed personal property were contained in Mrs. Tollett's inventory which showed a loss in excess of the policy limits. It was not until the filing of the suit that plaintiffs' claim for the loss of the personal property was limited to $3,000. Under such

circumstances the Court feels that interest at the rate of 6% per annum on the sum of $9,000 should be allowed from May 16, 1956 to June 6, 1956, and charged against the defendant's additional deposit of $100, the balance of which sum should be refunded to the defendant.

Let judgment in accordance with the foregoing be entered.