BUCHANAN v. THOMAS.

5-1768                                          320 S. W. 2d 650

Opinion delivered February 9, 1959.

Coleman, Gantt & Ramsay, E. Harley Cox, Jr., for appellant.

McKay, Anderson & Crumpler, for appellee.

PAUL WARD, Associate Justice. This appeal questions the execution of an alleged contract and a modification thereof.

W. H. Buchanan, Appellant, operates the Acoustics and Specialties Company which sells and installs acoustical tile and related products. Appellee, Elmer Thomas, is a general contractor who, in this case, contracted to build a new church for the Immanuel Baptist Church of Pine Bluff. The church's contract with Appellee called for the installation of certain acoustical material. Before making a contract bid for the church overall construction job, Appellee asked Appellant to submit to him a price for furnishing and installing the acoustical material. Appellant wired Appellee that his charge would be $3,723.00, but when the wire was received by Appellee it read, apparently through error of the telegraph company, $2,723.00. On the day Appellee received the wire he submitted his overall bid (based on Appellant's wire), together with a performance bond, to the church, and in due course he was awarded the construction contract. The next day Appellee received a letter from Appellant explaining the error in the figures and stating the correct acoustical contract or bid price to be $3,723.00. Having already submitted his church bid on the basis of the figure of $2,723.00, Appellee informed Appellant he would expect him to stand by his figure of $2,723.00. Appellant denies that any contract was entered into for the lower figure. In addition, Appellant says that, even so, it was changed by a later oral agreement. In brief, that is what this litigation is about.

Although the parties came to no definite understanding as to liability, Appellant installed the equipment; Appellee paid Appellant all except $190.00 of the lesser amount and offered his check (marked in full payment) for the $190.00 which was rejected by Appellant.

In his complaint, Appellant alleged that he contracted to do the work for $3,723.00 (instead of $2,723.00) and that Appellee had paid only $2,533.00 thereof, leaving a balance of $1,190.00 due him. Appellee answered that the contract was for $2,723.00 and that he had paid $2,533.00, leaving a balance due of $190.00, which he tendered in court.

The trial court found that the contract between Appellant and Appellee was based on a consideration of $2,723.00. The court apparently allowed the pleadings to be amended to conform with the testimony relative to an oral amendment to the contract, but held that no such change was sustained by the evidence. The court then dismissed Appellant's complaint and ordered the $190.00 turned over to him.

It is our conclusion that the decree of the trial court must be affirmed for the reasons hereafter set forth.

Regarding the original contract, we think the weight of the evidence supports the trial court's finding that Appellant agreed to do the job for $2,723.00, even though the testimony is not abundantly clear to that effect.

In reply to Appellee's request for the submission of a bid on the acoustical work on the church, Appellant sent a telegram to Appellee which (as received by Appellee) agreed to the price of $2,723.00. This figure was mentioned in two places in the telegram. It shows the date to be June 30, 1955, 10:30 a. m. That same day Appellee received the telegram and, before learning a mistake in the figure had been made by the telegraph company, submitted his bid, together with a performance bond, to the church. Also that same day, Appellant sent to Appellee by mail a formal confirmation on the basis of $3,723.00. This letter was received by Appellee on the following day.

Immediately following the above there were telephone conversations between the parties but no definite agreement was reached and the testimony is somewhat conflicting about what was said. Appellee testified that after he received the letter and learned of the suspected error, he called Appellant on the phone and, among other things, stated:

"But, I said, in the event my bid is accepted, or I am awarded the contract, I shall expect you to stand behind your telegram of $2,723.00, and he said, 'We will stand behind the telegram.' "

Appellant does not deny the telephone conversation with Appellee, and he admits that Appellee may have said something to the effect that if he got the contract, he (Appellee) was going to hold him (Appellant) to the wire, or rather the $2,723.00 figure. Therefore, if the Chancellor believed Appellee's version of the conversation, he was justified in holding there was a contract for $2,723.00. However, the Chancellor's decision is sustained by certain other facts and circumstances.

Appellant's brief contains numerous exhibits of letters and telegrams. It is interesting to note the substance of their content in chronological order:

(a) At 10:00 a. m. on June 30, 1955, Appellee received a telegram from Appellant naming the figure $2,723.00;

(b) On the same day Appellant wrote Appellee giving a figure of $3,723.00, received the next day by Appellee;

(c) On July 25, 1955, Appellant wired Appellee a suggestion that he use a different material at a price of $3,723.00;

(d) On the following day Appellee wrote Appellant that if his bid to build the church was accepted he would expect Appellant "to install the acoustical tile at the quoted price of $2,723.00, as per telegram received prior to bid opening," and,

(e) On September 2, 1955, Appellee wrote Appellant he had signed a contract for construction of the church and accepted Appellee's proposal in the amount of $2,723.00 for installing the acoustical equipment, and that it would be about 8 months before he would be ready for it.

Following the above, and without any further word from Appellant, Appellee notified Appellant in April 1956, that he was ready for the acoustical material. and Appellant forthwith shipped it to the job site in Pine Bluff. The price of the material was $2,533.00 and Appellee sent Appellant a check for that amount on May 28, 1956.

Upon Appellant's delay in proceeding with the installation, Appellee went to see Appellant at Little Rock. Appellee stated he found Appellant hesitant but did not refuse to send a crew to do the job. It was at this time that Appellant proposed that he and Appellee split the cost of the job over and above $2,723.00. Appellant claims they reached such agreement. Appellee says they did not, but says they had such conversation and that he agreed upon a condition that was never fulfilled. At any rate, Appellant sent his men to Pine Bluff and completed the job.

Since, as heretofore indicated, we sustain the trial court's holding that Appellant agreed to do the job for $2,723.00, we likewise must hold with the trial court that there was no valid oral agreement to change the original contract.

In the first place, Appellant's later actions indicated that he was not relying on the oral contract. He not only filed a lien on the basis of $3,723.00, but he also filed this suit on that basis. Moreover, there was no consideration for the alleged oral agreement. If, as we hold, Appellee was entitled to have the work done for $2,723.00, we can think of no benefit he would receive for agreeing to pay more. A case very much in point to this effect is *Feldman* v. *Fox*, 112 Ark. 223, 164 S. W. 766. Also see: *Desoto Life Insurance Company* v. *Jeffett*, 210 Ark. 371, 196 S. W. 2d 243; *Dominion Textile Company* v. *Beck*, 188 Ark. 1090, 69 S. W. 2d 862, and; *Johnson* v. *Aylor*, 129 Ark. 82, 195 S. W. 4.

Affirmed.