RESERVE LIFE INSURANCE COMPANY v. CLIFTON BAKER

5-4756                                    435 S.W. 2d 780

Opinion Delivered December 23, 1968
[Rehearing denied January 13, 1969.]

854

*Shackleford & Shackleford* for appellant.

*Paul K. Roberts* for appellee.

CARLETON HARRIS, Chief Justice. On August 17, 1965, appellee, Clifton Baker, applied to Reserve Life Insurance Company, appellant herein, for a hospital and surgical expense policy. The application was completed by Pat Curry, an agent for appellant, signed by appellee, and forwarded on to the company office in Dallas. Thereafter, a policy, as sought, was issued to Baker. On June 6, 1966, appellee entered a hospital for prostatitis, and hospital and surgical expenses were incurred as a result of surgery on the prostate gland by endoscopic means. A claim for benefits was filed by Baker, but the company denied liability, asserting that appellee had misrepresented the state of his health in answering certain questions in the application, it being the position of the company that it would not have issued the policy, had it known that Baker had chronic prostatitis in February, 1960. A company official testified that the questions on the application affected appellant's decision on whether to accept the risk, and that the decision to issue the contract was materially affected by the answers given by applicant to questions No. 6 and No. 8. These questions will be fully set out subsequently. Upon refusal of the company to pay the claim, Baker instituted suit in the Bradley County Circuit Court, and the case was tried by the court, sitting as a

jury. Judgment was entered for appellee in the sum of $470.00 for benefits under the policy, together with 12% penalty, an attorney's fee in the amount of $250.00, and costs. From the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the trial court erred in failing to hold the policy void for misrepresentation; that there was no substantial evidence to support the judgment; and that the court erred in awarding penalty and attorney's fee.

Question No. 8, the answers to which are principally relied on by appellant for reversal, reads as follows:

"Have you or any Member of the Family Group ever had, or ever been advised such person had, any of the following:

(a) Any disease of the heart, kidneys, stomach, urinary or gall bladder, rectum or respiratory system?

(b) High blood pressure, paralysis, arthritis, syphilis?

(c) Cancer, diabetes, hernia, goitre, or asthma?

If answer is 'yes,' give full details."

All of these questions were answered, "No." The evidence reflects that in February, 1960, Baker had trouble with his prostate gland, and was treated by Dr. Bill Whaley, a physician at Warren. Dr. Whaley's records reflected that he had given Baker a prostate massage on three occasions during that month. Dr. Whaley did not see appellee for that condition at any subsequent time. In arguing this case, counsel do so on the basis that the question asked in (a), "urinary or gall bladder," referred to the urinary system. For instance, from appellant's brief:

"In concluding that the prior diseased condition of the urinary system was too remote to be considered, the trial court erred."[1]

Gladys Anderson, Vice President in charge of the Disability Underwriting Department of the company, testified that if the application had shown that appellee had had chronic prostatitis, or received medical treatment for this in February, 1960, the application would have been rejected, the medical history not meeting the underwriting requirements for the type of policy issued to Baker.

In its brief, appellant then states:

"Under these circumstances, the trial court failed to consider the decisive issue, whether, under the circumstances, the false statements of the appellee's chronic prostatism precludes recovery."

It is true that no information was given relative to any trouble with the prostate, though as already stated, the record reflects that, in 1960, Baker had been treated for prostatitis (though he denied having received treatment)—but we see no need to discuss the question of misrepresentation, because actually, there is no question relative to the prostate or prostatitis. It will be noted that Question 8(a), the pertinent question in this litigation, relates in every respect to *organs* of the body, except the very last question which is, "respiratory system." Other than the last, each refers to a particular organ, and each reference to a particular organ is set off by a comma. The clause involved in this litigation is "urinary or gall bladder, ***" and there is no mention of urinary tract or urinary system; the reference is to the *urinary bladder.* Volume 2, Schmidt's Attorneys' Dictionary of Medicine, Page 853, defines urinary bladder, as follows:

---

[1]This was the holding of the court.

"Same as *bladder*. The term *urinary bladder* is used more specifically to differentiate it from the *gall bladder* or *gallbladder*. However, this seems to be an unnecessary refinement, since the term *bladder* when not otherwise modified, refers to the *urinary bladder*[2] by the force of established usage."

It is thus quite clear that Question (a) uses the word, urinary, to differentiate that bladder from the gall bladder, and has no reference whatsoever to the urinary tract or system[3].

Accordingly, there being no question in the application with regard to the prostate or to the disease of prostatitis, it necessarily follows that there can be no false answer. In other words, if the company desires information relative to any disease or infection of the prostate gland, it had best revise its application.

Question No. 6 simply asks if applicant and all members of the family group are now in good health, and this question was answered, "Yes." There is no showing that Baker was not in good health at the time of the application.

Question No. 9 inquires if applicant or any member of the family group has received medical or surgical advice or treatment within the past five years. This question was answered, "No." The record does reflect that Baker had low back pain in July of 1963, and also consulted Dr. Whaley in January, 1966, for dizziness, sore throat and nasal conjestion. However, the doctor stated that he did not see appellee for any complaints related to the prostate gland after February of 1960, and did not consider the low back pain as neces-

[2] All italicized words in the definition denote our emphasis.

[3] Even if there were a question relating to this system, persons not familiar with medical terminology might well never connect this with trouble from the prostate gland.

sarily related to that trouble. In other words, this answer, though not correct, was not a material misrepresentation, because appellee had not, within the last past five years, consulted the physician about the difficulty which occasioned the operation.

Since, as previously set out, no questions were asked about the prostate, the judgment of the trial court is affirmed, though its ruling was based on an erroneous premise.[4]

Baker obtained judgment in the amount of $470.00, which includes a benefit of $25.00 for anesthetic, and a $25.00 benefit for narcotics. The policy provides for both, but the bill submitted by the hospital only lists a charge of $144.25 for *drugs*. Appellant asserts that there is no proof that any narcotics were used. This objection is somewhat technical. While the use of the term "drug" does not necessarily imply narcotic or sedative properties, the word "narcotic" is defined in the medical dictionary, heretofore quoted, at Page 536, as, "A medicinal substance or drug which, when taken in sufficiently large doses, produces profound stupor or complete insensibility. In smaller doses it relieves pain without causing stupor." While all narcotics are drugs, all drugs are not narcotics, but apparently the words are often used interchangeably. The type of operation performed on Baker would seem to call for the use of narcotics. Be that as it may, the record does not reflect any objection to the introduction of the hospital bill.

The total amount sued for was $495.00, and the recovery was $470.00. The amount sought for surgical expense was $125.00, but the policy provides that the

---

[4]The trial court held that the testimony tending to show that Baker "was afflicted with any disease of the urinary system before issuance of the policy or the effective date of the policy was too remote and should not be considered ***."

company will only pay $100.00 for a prostate operation by endoscopic means.[5] Accordingly, appellant contends that the amount sued for was not recovered, and it is not liable for penalty and attorney's fee. The record shows that at the conclusion of all the evidence, the court held that the amount asked for in the complaint covering surgery was an error, and "that the plaintiff did not seek more than the policy provided." In rendering the judgment, the court held the complaint amended to conform to the proof, and granted the penalty[6] and attorney's fee.

We have permitted this to be done in numerous cases, but only after the insurer had an opportunity to confess judgment for the lesser amount. In *Progressive Life Insurance Company* v. *Hulbert*, 196 Ark. 352, 118 S.W. 2d 268, Hulbert sued for $400.00, and asked an instruction telling the jury that the verdict should be for that sum if the jury found for the plaintiff. The trial court was of the opinion that, under the terms of the policy, a recovery could not be had for more than $266.67; Hulbert then amended her complaint reducing the amount sued for to that figure, and requested an instruction telling the jury that the verdict should be for that sum if the company should be found liable. In affirming, we said:

"But the sum finally sued for was $266.67, and it was within the discretion of the court to permit this amendment. Had the insurance company offered to confess judgment for this amount when the complaint was amended it would have been proper to enter a judgment for that amount without penalty or attorney's fee. But this was not done. The defendant then insisted, and now insists that the plaintiff was not entitled to recover anything.

---

[5] A $200.00 benefit is provided for an open operation.

[6] The court was also confused in the amount, stating that the figure of $150.00 contended for (actually $125.00) was an error, but the judgment provided that the sum should have been $75.00 ror surgery, whereas the correct amount was $100.00.

860

"It was not error, therefore, to award judgment for the penalty provided by statute, and for the attorney's fee, which does not appear to be excessive."

See also *DeSoto Life Insurance Company* v. *Jeffett*, 210 Ark. 371, 196 S.W. 2d 243; *Old American Life Insurance Company* v. *Harvey*, 242 Ark. 720, 415 S.W. 2d 66. Here, appellant did not contend that appellee was seeking an excessive amount; it simply contended, as is contended on this appeal, that the company was not liable.

The judgment is thus affirmed. Appellee asks for an additional attorney's fee for services rendered on this appeal, and we think it proper to allow $100.00.

It is so ordered.